MENKE ET AL. *v.* THE GOLD MEDAL OIL CO. ET AL.

(Decided September 11, 1933.)

*Mr. John A. Scanlon, Mr. Edwin G. Becker* and *Mr. Leonard J. Dempsey,* for plaintiffs.

*Messrs. Freiberg & Simmonds, Messrs. Galvin & Tracy, Mr. J. Paul Geoghegan* and *Mr. Jerome Goldman,* for defendants.

Ross, J. This case was presented on appeal from the Court of Common Pleas of Hamilton county. A petition in error was also filed. The plaintiffs and defendants are the Gold Medal Oil Company, a corporation, and the several stockholders and directors thereof.

Some years ago the corporation was formed to deal in gasoline and oils, by Isaac Meyerfeld, Joseph B. Menke, C. P. Wagner, Jr., A. Julius Freiberg and William Geoghegan. The original capital stock consisted of three hundred $100 shares. Meyerfeld held one hundred and twenty shares, Wagner sixty, Menke sixty, Freiberg and Geoghegan fifty. Thereafter the capital stock was increased by the addition of fifty $100 shares, purchased by Meyerfeld, who later disposed of forty of such shares, twenty to A. B. Menke, brother of Joseph B. Menke, and twenty to Michael Ryan, a company employee.

In 1929 Joseph B. Menke bought from Meyerfeld ninety shares and from Freiberg twenty shares. In this year also the capital stock was again increased by one hundred and fifty $100 shares, making the total five hundred shares.

Immediately this new stock was by order of the board of directors directed to be sold by Joseph B. Menke. While no formal record of an empowering resolution appears in the evidence, the affairs of the corporation being conducted in an irregular manner, there is no question that such action was lawfully taken and was known to all stockholders and directors, who were

given full opportunity, and in fact urged, to purchase the new stock. The evidence shows at this time an active campaign led by Joseph B. Menke, then president of the company, to dispose of this stock. Notices were posted in the factory, and some of the stock was purchased by employees of the company and by the plaintiffs in this case. The directors of the company were identical with the stockholders of the company at this time.

In the summer of 1931 Meyerfeld and Joseph B. Menke, two of the founders and active executives in the company, died. Immediately after their deaths the holdings in the corporation were as follows:

Shares

| | | |
|---|---|---|
| Jos. B. Menke (Laura E. Menke, executrix).... | 183 | |
| Kriege, Plogman, Plogman, Niesen, Koetters, Elbert, — Friends of Jos. B. Menke to whom he sold of the authorized new issue.. | 45 | Plaintiffs |
| Omar Klaene—an employee and nephew of Menke | 2 | |
| | 230 | |

| | | |
|---|---|---|
| Meyerfeld (A. J. Freiberg, Executor)............ | 40 | |
| C. P. Wagner (One of the founders)............ | 15 | |
| H. P. Wagner (Son of the above)............... | 21 | |
| Thos. M. Geoghegan (Administrator)........... | 50 | |
| Paul Geoghegan................................ | 1 | Defendants |
| A. B. Menke, brother of Jos. B. Menke.......... | 20 | |
| Michael Ryan................................. | 20 | |
| Whalen, Borchers, Beude, — Employees ....................... | 13 | |
| | 180 | |

Unissued .................................................... 90

Total ... 500

Each stock certificate issued by the corporation contained the following language:

"It is agreed by the holder of the within shares of stock, and his heirs and assigns, that he will not dispose of any of the shares called for by this certificate

without first offering the same, upon thirty days notice, to the other stockholders of the company of the same class, to each, that number of shares of those called for by this certificate which is proportional to the number of shares of the stock of the same class already held by said other stockholders, and that upon the death of the certificate holder the shares shall first be offered to the remaining stockholders in proportion to the number of shares of common stock of the same class held by each, all on the basis of the book value of the share. In case there is any disagreement as to the book value, the matter is to be resolved by arbitration, each side of the controversy appointing one member, and the two so appointed, in case of disagreement, to select a third.''

Pursuant to the provisions contained in the certificate, the plaintiff Laura E. Menke, sole legatee, owner and executrix of the estate of her deceased husband, Joseph B. Menke, offered the entire one hundred and eighty-three shares of stock held by her husband at the time of his death to all the stockholders of the corporation, each according to the proportion of his holdings. This offer, in writing, was made September 23, 1931, and the record shows it was accepted in writing by H. P. Wagner, A. B. Menke, and Michael Ryan, and covered forty-nine shares of the one hundred and eighty-three shares belonging to the estate of Joseph B. Menke. The executor of Meyerfeld also made a similar offer, but this was not accepted by any of the stockholders.

The plaintiff Laura E. Menke, as owner and executrix of the estate of Joseph B. Menke, took the position that it was incumbent upon all of the stockholders of the corporation to accept shares in the estate proportioned to their holdings, and that this not having been done, the estate was freed from further obligation to continue the offer, or to deliver to those accepting the shares to which they were proportionately en-

titled. The offer was revoked October 27, 1931. The salary paid the husband of the plaintiff Laura E. Menke during his life, of $65 per week, was continued for some time in payments to her, and later reduced to $40 per week. These payments continued up to a short time before the litigation involved was instituted.

It is evident that after the failure to sell all of the stock, Laura E. Menke sought to continue the control of the corporation formerly exercised by her husband, made possible by the majority holdings of the estate and the friends of her husband. The minority holders obviously considered her incapable of successfully operating the business of the corporation. It is apparent also that while the corporation was doing a good business, it was in need of funds, and that pressure was being brought to bear to compel the corporation to retire some of its obligations.

Negotiations were carried on between the opposing factions for some time, but these were ineffectual in producing any agreement between the parties. The stockholders who had accepted offers to sell the stock of the Menke estate were threatening to sue for specific performance of their contract, but this step was delayed at the request of the attorney for the plaintiff executrix.

It became apparent finally that no conclusion could be reached with the plaintiff Laura E. Menke, and it then occurred to the opposition faction to take advantage of the ninety shares of treasury stock still unsold. This, it will be remembered, was the remaining number of shares left after the campaign led by Joseph B. Menke to sell the last issue of one hundred and fifty shares. These ninety shares were purchased by the defendant stockholders, and while the same were not paid for in full, in each case, either by the retirement of indebtedness due them from the corporation or par-

tial payment in cash, each stockholder acquired sufficient legal title to the stock purchased to entitle each to vote the shares allotted to him.

An election was had and the plaintiff Laura E. Menke was ousted from control. The present suit was brought to compel a cancellation of the sale of the ninety shares of treasury stock to the defendant stockholders, to enjoin disposition of the same, to set aside the election of directors, to enjoin their functioning as such, and for the appointment of a receiver.

Cross-petitions were filed asking for specific performance of the contracts to sell the defendants A. B. Menke, Wagner, and Ryan the forty-nine shares of the stock of the estate of Joseph B. Menke, and the corporation set up a claim against the estate for an indebtedness averred to be owing to the corporation from the decedent Menke.

Courts only with the greatest reluctance interfere in the internal administration of the affairs of a corporation, and only do so when it clearly appears that a fraud has been perpetrated, or, in the case of officers and directors, that they are guilty of a breach of trust to those to whom they owe a fiduciary obligation.

In an extended argument it is claimed by the plaintiffs that the sale of the ninety shares to the defendant stockholders was a fraud upon the plaintiffs. We find that the record fails to sustain this contention. All of the plaintiffs had had a continuing right, for a number of years, to purchase this stock, of which privilege they took no advantage. They cannot now complain that in availing themselves of this same privilege the defendants have violated a trust or been guilty of fraud.

Some considerable point is made of the fact that this purchase of the ninety shares was done without the defendants advising the plaintiffs of their intention. Owing to the strained relations then existing between

the parties, such action can be easily understood. The defendants had a right to purchase the stock and the ensuing election was valid and legal.

On the cross-petitions a reading of the language of the certificate previously quoted fails to disclose that the plaintiff Laura E. Menke, as owner and executrix, is entitled to demand that the stockholders purchase all or none. Such a provision could have been easily written into the certificate contract. It was not, and this court cannot now insert it. It is quite apparent why the stockholders should not desire to extend a privilege into an obligation, for, if the construction contended for by the plaintiffs had been a provision, and had been placed in the certificate contract by conclusive language, the action of one shareholder with one share of stock in refusing to take his proportionate share because of financial inability or otherwise would prevent any shareholder availing himself of the privileges conferred by the contract, upon which he relied in taking his stock. Such action by such individual shareholder also would release the estate from any obligation to proceed with the others. It is not difficult to see the harshness and undesirableness of such a provision, and there is ample reason for its not being placed in the certificate contract. In any event, no language is used evidencing such an intention.

As to the claim against the estate of Joseph B. Menke, we do not find that the necessary steps have been taken to properly assert this claim at this time in this proceeding.

It is our conclusion, therefore, that the petition of the plaintiffs be dismissed, and that the prayers of the defendants for specific performance be granted, and that the claim of the corporation against the estate of Joseph B. Menke be denied. A decree may be presented for defendant accordingly.

As the matter has been heard on appeal, the petition in error will be dismissed at the costs of the plaintiffs in error.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.