**GOTTLIEB, Plaintiff-Appellant, v. MEAD CORPORATION et, Defendants-Appellees.**

Ohio Appeals, Second District, Montgomery County.

No. 2313.   Decided April 27, 1955.

Harrison, Spangenberg & Hull, By Allan Hull, of Counsel, Cleveland, for plaintiff-appellant.

Smith, Schnacke & Compton, By Murray Smith and Francis D. Schnacke, of Counsel, Coolidge, Becker, Wall & Wood, By J. B. Coolidge, of Counsel, Turner, Wells & Courson, By W. B. Turner, of Counsel, Dayton, for defendants-appellees.

### OPINION

By HORNBECK, J:

This is an appeal on questions of law and fact from a judgment of the Common Pleas Court dismissing plaintiff's petition.

The suit is in equity.   Issues are drawn in this Court upon new pleadings, a second amended petition, answers of defendants, The Mead Corporation, The Mead Sales Company, and the other named individual defendants and, according to the Bill of Exceptions, a reply which we do not find in the files.   Although the plaintiff has changed somewhat the averments of her petition and first amended petition, basically the

charges against the defendants are the same, although now it is urged that defendant, George H. Mead, has created a trust of his holdings in The Mead Sales Company in favor of The Mead Corporation.

We have been favored by the briefs of the parties, which are most complete in setting out the facts and the law involved, which does not require extended examination because the legal principles controlling the judgment are well established. We have also the sixty-five page opinion of Judge Martin, who tried and disposed of the cause in the Common Pleas Court. He has with exceptional detail found the facts respecting the origin, history, business developments of the defendant corporations, and, insofar as germane, the relation of the individual defendants thereto and has applied the law to these findings of fact. We are in complete accord with Judge Martin's conclusion and the reasons therefor, and could well enter the same judgment here as in the Common Pleas Court upon the authority of his opinion. Because of the thoroughness and correctness with which the cause was tried and disposed of in the Common Pleas Court, it would serve no useful purpose for this Court to again detail the issues and discuss at length the manifold questions, principally factual, which are developed by the very voluminous record. We will then restrict this opinion to a few general observations with the knowledge that counsel and this court have full appreciation of the issues, disposition of which must determine the judgment here.

It is contended by the appellant that this Court, upon the statements in the cross-examination of defendant, George H. Mead, as to his holdings individually, and through The Mead Investment Company in The Mead Sales Company, should declare that they are held as an express or a resulting trust in favor of the defendant, The Mead Corporation. This claim is the antithesis of the relief sought in the original and first amended petition and, in part, in the second amended petition; namely, a constructive trust, or a trust ex maleficio.

It is unnecessary to labor the issue as to an express or resulting trust of the holdings of George H. Mead, because the primary and basic elements of such a trust may not be found, viz: A declaration of purpose to create a trust, a designation of beneficiary, or the object of the trust. As there is no showing that a trust was created by the settlor, a court of equity will not create it for him. The statements of Mr. Mead in his testimony upon which appellant relies, in their true interpretation do not permit of the conclusion that there ever was any intent, either on the part of Mr. Mead, The Mead Corporation, or The Mead Sales Company, that a trust, express or resulting, should be created. To construe his statements otherwise is to distort their obvious meaning in the light of his testimony in its entirety.

A constructive trust, according to Bouvier, is one that is raised independently of any intention of the parties thereto but is forced on the conscience of the trustee by equitable construction and the operation of law. It was the original intention of plaintiff, maintained on this appeal, that the named defendant with common purpose and by common action caused The Mead Corporation and its predecessor to enter into an agreement and to continue that agreement with The Mead Sales Company, whereby it sold the product (white paper) of The Mead

Corporation, with a known substantial loss of profits to which it was rightfully entitled. Although the second amended petition proceeds, in part, as upon overt fraud of the corporate and certain individual defendants, if gross mismanagement by the named defendants and failure to protect the interest of The Mead Corporation brought about the contract between The Mead Corporation and its predecessor and the Sales Company to the obvious and marked finaneial loss of The Mead Corporation, a court of equity could attribute to the defendants malfeasance by implication.

· However, a careful examination of all of the factual developments in this cause discloses no proof whatever of bad faith, dishonest dealing, or over-reaching on the part of the corporate or individual defendants in the transactions involved in this suit. The agreement under attack could not have even been in contemplation when the Sales Company was organized. The plaintiff now concedes that fact, but insists that since the early '30's the arrangement between The Mead Corporation and The Mead Sales Company has been so detrimental to the financial interests of The Mead Corporation that it should be terminated.

Upon the whole record in its most favorable light to the plaintiff, all that can be said is that there might be a difference of opinion if, in its later and more prosperous years, The Mead Corporation would have made more money if it had set up its own sales organization and made its sales through that organization. Determination of this question was exclusively for the Board of Directors of The Mead Corporation, provided only that it acted in good faith. This has been the law without question since the pronouncement of the first syllabus in **Sims v. Street Railroad Co., 37 Oh St 556.** It is developed that the · question thus raised had been considered in 1933, a significant time in view of plaintiff's contention, and referred to a committee of five of the officers of The Mead Corporation, which committee was free from any suggestion of domination by any of the defendants. This committee had the matter under consideration for eight or nine months and reported favorably to the continuation of the subsisting sales arrangement. Thereafter, the sales agreement between the defendant companies came under the scrutiny of two independent organizations, acting for investment companies, which made surveys preliminary and pertinent to the contemplated sales of certain securities of The Mead Corporation. Both approved the plan, stating it was sound business procedure.

It is further urged that the policy followed by The Mead Corporation is at variance with that of other large companies which maintain their own sales organizations. Obviously, such procedure is not without exception. The test of the plan which the Board of The Mead Corporation had to apply in charting its course was: How does this arrangement affect our corporation in view of its own experience? The experience of the Mead Corporation, through its contract with the Sales Company, has been so conspicuously successful as to constitute a compelling argument in favor of the arrangement under attack.

The fact also that the policy involved in this action was challenged as early as 1949, and has continued for six years, must have been made known to numerous stockholders of The Mead Corporation, not one of

286

whom intervened as a party or appeared as a witness to question the soundness of that policy. This is further and convincing argument for the soundness of the practice.

The character and eminence of the members of the Board of Directors of The Mead Corporation in the business world is persuasive, not only that they had the purpose and the acumen to protect and advance the interests of their company and their own interests, but that they would not and could not afford to be a party to any questionable contract with the Sales Company.

The judgment will be for the defendants, and the second amended petition will be dismissed.

MILLER, PJ, WISEMAN, J, concur.