McDonald v. Medical Mutual of Cleveland, Inc., et al.*

[Cite as McDonald v. Medical Mutual (1974),
41 Ohio Misc. 158.]

(No. 921,449—Decided March 14, 1974.)

Court of Common Pleas of Cuyahoga County.

*Metzenbaum, Gaines, Finley & Stern Co., L. P. A.,* Mr.
Donald M. Robiner, Mr. Marshall J. Wolf, Mr. Marvin E.
Sable and Mr. Robert N. Rapp, for plaintiff.
    Messrs. Jones, Day, Cockley & Reavis, Mr. Ellis H.
McKay, Mr. Thomas E. O'Connor, Jr., Messrs. Vorys,
Sater, Seymour & Pease, Mr. John C. Elam, Mr. Thomas
B. Ridgley and Mr. Phillip W. Stitchter, for defendants.
    Mr. James A. Baker, Mr. Spencer Neth, Mr. Niki Z.
Schwartz, Messrs. Gold, Rotatori, Messerman & Hanna and
Mr. H. W. Stark, for objectors.

FINK, J.  The primary issue of this case is whether
Medical Mutual of Cleveland, Inc., may form and invest

---

*Judgment affirmed by the Court of Appeals, February 13, 1975.

in a stock holding company and stock life insurance company as wholly owned subsidiaries. The specific issue now before the court is whether the Stipulation of Settlement achieved by the parties over many months of negotiations should be approved by the court as required by Civ. R. 23(E), as being fair, reasonable and adequate. For the following reasons, the court finds that the settlement should be approved.

Medical Mutual of Cleveland, Inc. (Medical Mutual), is a mutual non-profit casualty insurance company organized under the laws of the state of Ohio. *Following the approval by the Ohio Superintendent of Insurance on June 20, 1973, of the investment by Medical Mutual in a holding company and stock life insurance company,* Medical Mutual instituted incorporation of Medical Life Insurance Company (Medical Life) as a wholly owned subsidiary on September 13, 1973. Public announcement of the formation of Medical Life was made on September 21, 1973.

On September 25, 1973 plaintiff filed the class action complaint challenging the legality of Medical Mutual's investment in Medical Life. Subsequently, on November 8, 1973, plaintiff filed an amended complaint additionally challenging the amount of surplus accumulated by Medical Mutual.

On September 28, 1973 the parties agreed to a restraining order maintaining the status quo of the holding and life insurance companies, restraining defendants from taking any action with respect to further investment, transfer and/or expenditure of accumulated funds or surplus of Medical Mutual related to the formulation of Medical Life or a holding company. The restraining order was continued from time to time thereafter by mutual agreement of the parties until such time as this ruling should be rendered.

Subsequent to the filing of the complaint, plaintiff's counsel conducted extensive document discovery, reviewing voluminous files of Medical Mutual. Defendants filed a motion to dismiss pursuant to Rule 12(B)(6), asserting therein that Medical Mutual was authorized to invest in a

life insurance subsidiary pursuant to R. C. 3901.11, that it had done all things necessary to make such an investment pursuant to R. C. 3941.12 and 3925.08, and that it had obtained approval from the Ohio Department of Insurance. The court reviewed the motion to dismiss and the memorandum and affidavits in support thereof and concluded that the parties should consider the possibilities of settlement of this action since litigation might prove costly, time-consuming and unproductive for all concerned. The court brought together the parties in an effort to seek a negotiated settlement of the disputes and participated with them in hammering out a compromise.

The court's only concerns were that the law be strictly followed and that the interests of all of the members of the class be protected to the best of the court's ability to do so.

Following long and strenuous negotiations, the parties presented the court with a Stipulation of Settlement and Dismissal on February 14, 1974. Also on February 14, 1974, the court ordered that the action be maintained as a class action pursuant to Civ. R. 23(B)(2). The proper class is composed of all persons who were members of Medical Mutual on the date of filing of the complaint or who became members between that date and the date of the first publication of notice to the class of the proposed settlement. That order also directed Medical Mutual to publish notice of the settlement of the class action in two newspapers of daily circulation in Cuyahoga County once a week for three consecutive weeks beginning February 21, 1974.

Notice of the proposed compromise was published three times in The Cleveland Press and in the Cleveland Plain Dealer once a week for three consecutive weeks. Both newspapers are newspapers of general circulation in the five counties in which Medical Mutual transacted business of insurance. The combined circulation of the two newspapers is 699,319 in the five counties. (There are 730,021 households in those counties.)

In addition to the publication of the notices as required by the court, on February 14, 1974 both The Cleveland Press and television station WJW-TV carried news

stories of the proposed compromise and settlement of the class action, making specific reference to the March 14 hearing date and the March 8 deadline for filing written objections to the proposed settlement. Television station WJW-TV reaches at least half of the households in all five counties. Moreover, various other newspaper, television and radio news reports included coverage of the proposed settlement, thereby creating a climate of general public awareness.

On March 14, 1974, the court held a hearing to determine whether the proposed settlement was fair, reasonable and adequate. Even with all of the publicity attendant to the lawsuit and the settlement hearing, only a handful of objectors appeared in person or by counsel at the March 14th hearing. Each objector or his representative was given an opportunity to state in writing and orally the basis of any objection to the settlement. Having considered carefully and at great length all matters related to the action and the proposed settlement which are before the court, including the objections raised thereto on all matters presented at the hearing and a thorough study of all such arguments and briefs submitted thereafter, this court finds that the proposed settlement is fair, reasonable and adequate as to members of the class and should be approved.

While the court need not go into all of the merits of the controversy, in judging the fairness and reasonableness of a settlement it may appropriately consider the likelihood of the class being successful in the litigation. 7A Wright and Miller, Federal Practice and Procedure, 230-31, Section 1797; *Bryan* v. *Pittsburgh Plate Glass Co.* (W. D. Pa. 1973), 59 F. R. D. 616; *Schimmel* v. *Goldman* (S. D. N. Y. 1973), 57 F. R. D. 481.

In this regard, while this court expressed no opinion as to the eventual finding on the issues raised by this lawsuit, substantial questions exist as to the likelihood of plaintiff prevailing in his attack upon the legality of the formation of an investment in the life insurance company by Medical Mutual and the level of Medical Mutual's reserves. One of the primary obstacles to Medical Mutual's forma-

162

tion of the life insurance subsidiary appeared to be the restriction included in its articles of incorporation, which stated:

"The corporation is formed for the purposes of transacting insurance and reinsurance business, *except life insurance*, and any of the kinds of insurance set forth in and as authorized by Section 3941.02 of the Ohio Revised Code as it now exists or may hereafter be amended * * *." (Emphasis added.)

On February 19, 1974, at the annual meeting of Medical Mutual, its members voted to delete the phrase "except life insurance" from the articles of incorporation, thereby removing this potential legal impediment to Medical Mutual forming and investing in the life insurance subsidiary. Furthermore, based upon the memorandum and affidavits in support of the motion to dismiss filed by the defendants, it appeared that Medical Mutual satisfied all technical requirements of the statutes and the Department of Insurance in obtaining departmental approval of its investment in Medical Life.

As to the question of the propriety of the level of accumulated surplus, this is essentially a business decision to be left in the hands of the board of trustees of Medical Mutual.

Courts traditionally have refused to interfere in such business decisions of corporate managers absent the showing of fraud, abuse of discretion or bad faith. 12 Ohio Jurisprudence 2d 558-59, Corporations, Section 448; *Sims* v. *Street Railroad Co.* (1882), 37 Ohio St. 556; *State, ex rel. Stuart,* v. *Urschel* (1922), 105 Ohio St. 640; *Coss* v. *Mansfield Lodge No. 56, B. P. O. E.* (Richland Co. Cir. Ct. 1902), 4 Ohio C. C. R. 11; *Gottlieb* v. *Mead Corp.* (Montgomery Co. Ct. App. 1955), 72 Ohio Law Abs. 283; *Menke* v. *Gold Medal Oil Co.* (Hamilton County 1933), 47 Ohio App. 180; *Lomis* v. *Dexter* (Super. Ct. of Cincinnati 1888), 10 Ohio Dec. Rep. 287; *Gruber* v. *Chesapeake & Ohio Rwy. Co.* (N. D. Ohio 1957), 158 F. Supp. 593. There has been no indication in these proceedings of any fraud, bad faith or abuse of discretion by the board of trustees of Medical Mutual in

determining the level of surplus which is appropriate for the company. Therefore only with great reluctance would this court impose its judgment upon the duly elected board of trustees, especially where the very action complained of is under the ultimate control of the Department of Insurance, the state agency entrusted by law to regulate the insurer. The court also has taken judicial notice of the fact that a single catastrophic year may wipe out a medical casualty company's entire surplus. One company in Michigan went from a $50,000,000 reserve in one year to a $17,000,000 deficit in the following year. One of the Blue Shield plans in New York is virtually bankrupt and is attempting to merge to protect the rights of subscribers and policyholders. With the approval of and the request of both parties to this action as well as their counsel, this court personally made a detailed study of the entire history and operation of Medical Mutual of Cleveland, Inc., and certain facets would appear to be relevant and ought to be mentioned. The records of this company reveal that some seven years ago this company was in dire financial straits and fighting for its very survival. At that time the management was changed and a new board of trustees was elected, and named as new president of the company was Edward C. Lechner. The other distinguished citizens of this community named to the board of trustees are as follows: Campbell W. Elliott, President of the Greater Cleveland Growth Association and former President of The American Ship Building Company; Claude M. Blair, Chairman of the Board of The National City Bank of Cleveland; Walter C. Bergstrom, President of The Weldon Tool Company; Frank M. Barry, M. D., a distinguished medical doctor; Gordon Patterson, Chairman of the Board of Trustees, and Retired Vice Chairman of Eaton, Yale & Towne, Inc.; David A. Chambers, M. D., a distinguished surgeon; John G. Sarber, Esq., a partner in the law firm of Jones, Day, Cockley & Reavis; Eugene A. Ferreri, M. D., Medical Director of the W. S. Tyler, Inc.; Herbert E. Strawbridge, Chairman of the Board of The Higbee Company; C. R. Jablonski, M. D., a distinguished physician; G. J. Tankers-

ley, President of The East Ohio Gas Co.; George R. Krause, M. D., a distinguished physician and head of the Department of Radiology at Mt. Sinai Hospital; Karl H. Rudolph, President of Cleveland Electric Illuminating Company; John S. Watterson, Jr., retired partner in the firm of Paine, Webber, Jackson & Curtis; and J. Maurice Struchen, Chairman of the Board of Society National Bank of Cleveland. Under the leadership of this distinguished board of trustees this company has prospered until today it is a sound, strong company with outstanding leadership in its management and directors and with an accumulated reserve of approximately 36 million dollars. When one considers that the members of the board of trustees give of their valuable time and efforts freely, and only in the public interest, without fees of any sort, their contribution is even more remarkable.

Medical Mutual's financial structure has radically improved and today throughout the industry they are recognized as a model for both their administrative abilities and their financial acumen. Obviously with such a record of progress, such basic business judgment matters as the level of surplus should therefore be left to the board of trustees and the Ohio Department of Insurance in the absence of a showing of fraud, bad faith or abuse of discretion, none of which has been shown here.

It is with this background of serious questions as to the likelihood of success on the part of the plaintiff and the class he represents that the court must now consider the fairness, reasonableness and adequacy of the proposed settlement. Pursuant to the settlement, Medical Mutual will be authorized to proceed to invest in the holding company and the life insurance company. One of the most significant benefits obtained by plaintiff is the enlargement of the board of trustees of Medical Mutual from 15 to 21 trustees. This increase will enable the present trustees, pursuant to the settlement terms, to appoint the six persons designated in the Stipulation of Settlement to staggered terms on the board of trustees. Representation on the board will be significantly broadened

by the addition to the board of a woman, a black, an individual of Polish origin and three representatives of the major labor unions in this community, many of whose members are certificate holders of Medical Mutual and whose membership makes up a significant percentage of Medical Mutual's subscribers and a large part of the class. This alteration in the makeup of the board represents a significant change in the composition of the board and the viewpoints expressed. Some of the objectors have argued that the present settlement is insufficient because there is no guarantee of future representation by these consumer representatives. Such a guarantee would be impossible under R. C. 3925.03, but the compromise provides opportunity for continued representation by staggering the initial terms of the new trustees up to the maximum three-year terms permitted by law. Although there can be no assurance of re-election as a matter of law, the proposed settlement sets the precedent for broader representation on the board, and future trustees necessarily will be selected by the members.

These new trustees will participate in future decisions concerning the business of the company and will be in a position to watch and report their concerns to members of Medical Mutual. They will participate in future major decisions on rates, contract benefits, and future substantial investments. This hardly can be considered a hollow victory for the plaintiff and the class. Rather than have the court issue orders and become bogged down in running the affairs of the company, the solution of increasing consumer representation on the board provides flexibility for meeting changing business conditions, offers the opportunity for the new trustees to acquire accurate information on which to base future decisions and allows them to participate in making those decisions.

Three of the new trustees will also be elected to the board of Medical Life where they will have the opportunity to serve the same function as on the Medical Mutual board. The board of directors of Medical Life will determine such things as rates, major investments, standards of insurability and payment of dividends.

As another significant part of the settlement, the denial of preemptive rights will be deleted from the articles of incorporation of Medical Life. More importantly, in the future these preemptive rights may only be waived by the affirmative vote of two-thirds of the Medical Mutual board present at a meeting at which a quorum is present, a very significant protection for the members of the class.

While not actually part of the submitted Stipulation of Settlement and Dismissal, this court feels compelled to take judicial notice of the fact that the defendants authorized this court to announce simultaneously with the submission of the Stipulation of Settlement that Medical Mutual had embarked upon a rate reduction and/or benefit liberalization program which is valued to the subscribers and all of the members of the class here involved at over four million dollars this year alone. Certainly, this is a significant benefit for the members of the class.

Of further benefit to all of the subscribers, Medical Mutual has also announced along with this significant Settlement the formation of a consumer advisory committee to be chaired by Solomon Harge, the distinguished black executive director of Consumer Protection and James Iafelice, a distinguished labor leader.

And finally, the proposed Stipulation of Settlement includes a provision for payment by Medical Mutual of plaintiff's attorneys fees in the sum of $90,000.00.

After all of the other matters hereinbefore set forth had been negotiated by the parties, the last issue to be considered was the amount of attorney fees. Normally plaintiff's counsel would have submitted their bill to the court and the court would have set those fees which it felt were reasonable and proper under the circumstances. However, in this instance, defendants insisted that they wished to negotiate these fees at arms length with plaintiff's counsel so that they would know exactly what each and every one of the terms of the settlement were and there should be nothing unknown to them or to the members of the class and that notice be given to such members in accordance with law.

These negotiations between the parties began with demands on the part of the plaintiff's counsel for fees of over $200,000 and an initial offer by defendants to them of fees of just over $50,000. These negotiations went on for many days and finally both parties agreed on attorney fees in the amount of $90,000. Defendants insisted after these fees had been negotiated that this amount be made part of the settlement and the entire class be given notice of the amount of the fees in the notice printed in The Cleveland Press and Cleveland Plain Dealer. The court finds that these fees are an item of relevant matter of which the class is entitled to be informed and the court believes that in the interest of full disclosure, such notice was necessary and proper. *Olin* v. *Ginsberg* (Dist. Ct. S. D. N. Y., Nov. 2, 1970), 1970-71 CCH Fed. Sec. Law Reptr. Dec., Paragraph 92,872; *Epstein* v. *Weiss* (Dist. Ct. La., July 17, 1970), 1970-71 CCH Fed. Sec. Law Reptr. Dec., Paragraph 92,938. If the agreement on fees had been reached by the parties prior to notice and *not* included in the published notice, the award might be subject to some scrutiny. *Sertic* v. *Carpenters District Counsel* (6th Cir., 1972), 459 F. 2d 579, 80 L. R. R. M. 2553. Defendants considered plaintiff's counsel's itemized records showing considerably more than 1300 hours of time spent up until February 14, 1974 and defendants realized that there would be additional time required of plaintiff's counsel before the matters here involved would be concluded. Defendants further considered that this case had been accepted and filed on a contingency fee basis. Defendants and the court recognized that contingency fee representation justifies a somewhat higher fee than one based solely on hourly rates. These facts plus the court's personal knowledge of the arms length and hard-fought nature of the negotiations between the parties on all facets of this settlement as well as on the amount of the fees established clearly in the mind of the court that the fees agreed upon were fair and reasonable under all of the facts and circumstances here involved. The court also was not unmindful of the very significant benefits which counsel for the plaintiff had secured for all of the members

of the class and these benefits, in the court's judgment, could not have been achieved except for the excellent representation offered by plaintiff's counsel.

As an aside, the court ought to mention that in its judgment without this settlement defendants might very well have been able to go through with their proposed plans without any of the benefits given by this settlement to the subscribers.

Taking into consideration the likelihood of plaintiff and the class prevailing in this case, and considering the settlement's very substantial benefits to the class, the court finds that the settlement contained in the Stipulation of Settlement and Dismissal is fair, reasonable and adequate and should be approved. *Norman* v. *McKee* (9th Cir., 1970), 431 F. 2d 769; *Wainwright* v. *Kraftco Corp.* (N. D. Ga., 1973), 58 F. R. D. 9.

Against all of the background of this case and by reason of this court's close personal observation of the tenacity with which the interests of all members of the class have been advanced by plaintiff's counsel, together with the total lack of any evidence by objectors to the contrary, this court finds that the members of the class have been ably and commendably protected by the plaintiff and his counsel; that the proposed settlement is in all respects free of any hint of fraud or collusion between the parties; and that the terms and conditions of the settlement are eminently fair, adequate and reasonable to the class providing the members of Medical Mutual with very substantial benefits and should be approved. *Norman* v. *McKee, supra*; *Wainwright* v. *Kraftco, supra.*

Furthermore, the court finds that there has been no credible reason advanced by any objector nor has the court found any reason why it should substitute its judgment for that of the parties who worked out the settlement or why this court should disregard the recommendation of approval by competent counsel well experienced in class action, consumer and corporate matters. *Schleiff* v. *Chesapeake ond Ohio Rwy. Co.* (S. D. N. Y., 1967), 43 F. R. D. 175; *Glicken* v. *Bradford* (S. D. N. Y., 1964), 35 F. R. D. 144.

Civ. R. 23(E) requires that before a settlement of a class action be approved by the court notice of the proposed settlement must be given to all members of the class "in such manner as the court directs."

No Ohio decisions have construed Civ. R. 23(E), making it necessary to look to the analysis of its counterpart in the Federal Rules of Civil Procedure, Rule 23(e). The two leading treatises on the Federal Rules agree that the manner of giving notice required by Rule 23(e) is "committed to the sound discretion of the court" and "leaves the court with virtually complete discretion." 3B Moore's Federal Practice, 23-1508, Section 23.80[3] and 7A Wright and Miller, Federal Practice and Procedure, 237, Section 1797. Wright and Miller add that "there is no single way in which the notice must be transmitted." This court holds that the requirements of Civ. R. 23(E) were complied with in this case by the giving of the newspaper publication notice previously described.

This case previously has been certified as a class action under Civ. R. 23(B)(2). Individual notice is not required to be given to members of a Rule 23(B)(2) class. Final judgment in such action binds the class whether favorable or unfavorable to it even absent individual notice. See Civ. R. 23(C)(3). Many federal courts acting under the comparable Federal Rules of Civil Procedure have held that Rule 23(b)(2) class members may be bound by a judgment even though no notice of the pendency of the action is ever given to them. See *Francis* v. *Davidson* (D. Md. 1972), 340 F. Supp. 351, affirmed 409 U. S. 904 (1972); *Hammond* v. *Powell* (4th Cir. 1972), 462 F. 2d 1053, 1055; *Baham* v. *Southern Bell Telephone & Telegraph Co.* (W. D. La. 1972), 55 F. R. D. 478, 481. If individual notice is not necessary to bind Rule 23(B)(2) class members to a final judgment, no individual notice is necessary for approval of this settlement. Moreover, other courts have held that an essential requisite of due process as to absent members of a class is adequacy of representation of their interest by the named parties. See *Northern Natural Gas Co.* v. *Grounds* (D. Kan. 1968), 292 F. Supp. 619, 636, affirmed in part and

reversed in part on other grounds, 441 F. 2d 704 (10th Cir. 1971, certiorari denied 404 U. S. 951 (1971); *Dolgow* v. *Anderson* (E. D. N. Y. 1968), 43 F. R. D. 472. Plaintiff has adequately represented the interests of the absent class members and the class has had excellent, able and thoroughly prepared and qualified representation by counsel for the plaintiff in addition to adequate notice of the proposed settlement and opportunity to object to said settlement.

This court has personally observed the thorough detailed and outstanding legal representation rendered by counsel for all sides and wishes to commend them on the distinguished professional and ethical manner in which they have represented the various views presented with respect to the issues of this lawsuit.

For all the above reasons the court finds that the settlement proposed by the parties in this Stipulation of Settlement and Dismissal is fair, reasonable and adequate and should be and hereby is approved, and that the notice of the settlement given to members of the class is adequate and meets the requirements of Civ. R. 23. Counsel for the parties are instructed to prepare and submit to the court an Order Approving Settlement and a Judgment Entry consistent with this opinion and the Stipulation of Settlement and Dismissal.