### SCARANO v. CENTRAL R. CO. OF NEW JERSEY.

No. 10942.

United States Court of Appeals Third Circuit.

Argued March 5, 1953.

Decided April 14, 1953.

Milford J. Meyer, Philadelphia, Pa. (Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., on the brief), for appellant.

Henry R. Heebner, Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania dismissing a complaint on motion for summary judgment. But the matter in controversy begins with an earlier suit in the same court.

On February 11, 1949 the present plaintiff, then an employee of defendant railroad, was injured by falling from the top of a locomotive. He brought suit against defendant under the Federal Employers' Liability Act, 35 Stat. 63, 1908, as amended, 45 U.S.C.A. § 51 et seq., 1946, to recover for his injuries. Plaintiff alleged and defendant denied that plaintiff was "totally incapacitated from resuming his former occupation or from engaging in any other form of labor." Each side produced medical witnesses who testified in support of its position. For example, one of plaintiff's witnesses testified that plaintiff was "totally disabled" and that his "condition will become progressively worse should he attempt" any work involving "the normal range of use of the back that is usually required in any physical effort." This issue, along with others, was submitted to a jury which, on October 4, 1950, returned a verdict in favor of plaintiff in the sum of $35,000. The evidence which had been submitted to the jury included the facts that plaintiff was forty-nine years old at the time of the accident and that he had earned $3,131.92 in the year preceding the accident. Defendant moved for a new trial, alleging excessive damages as one of its grounds. Before the trial court had ruled on this motion, a settlement in the amount of $27,750 was reached. Pursuant to stipulation, defendant's motion was withdrawn and judgment for the amount of the settlement was entered and marked satisfied on November 27, 1950.

Within less than 30 days thereafter, on December 24, 1950, and again on January 2, 1951, plaintiff called upon defendant to reinstate him in his job, relying on the terms of a collective bargaining agreement between defendant and the International Brotherhood of Firemen, Oilers, Helpers, Roundhouse and Railway Shop Employees of which plaintiff was a member. While the exact terms of the contract are not before us, the parties have proceeded on the assumption that it provides that an employee injured in the course of his employment is entitled to reinstatement with seniority rights as soon as he is physically able to perform the duties of his job. Defendant refused to reinstate plaintiff or to examine him to determine his physical condition.

Plaintiff thereupon brought the present action alleging breach of contract and demanding damages for wages already lost since defendant's refusal on December 24, 1950 to reinstate him, and for future loss of wages. Defendant, without answering the complaint, moved for summary judgment on the ground that "the amount of [the] judgment [in the earlier action] was based upon the plaintiff's claim, supported by his medical testimony, that he was totally and permanently disabled from doing railroad work and therefore bars the

right of plaintiff to any further compensation * * * either under the contract or otherwise." The record of the earlier action was offered in support of the motion. Plaintiff denied that the earlier litigation was conclusive as to his present condition. The District Court granted summary judgment for defendant. 107 F.Supp. 622. From this judgment, plaintiff now appeals.

This case presents only the question whether plaintiff can thus be stopped at the outset or whether he is entitled to go further in his effort to prove his claim. Plaintiff's theory advanced in this court is that in his present suit on a contract the only relevant question relating to his health is whether or not he was physically qualified to perform the necessary work on the day that he applied for reinstatement, and that this fact is not judicially determined by the judgment entered in the earlier action since there is no way of knowing whether the jury in that action decided that plaintiff was permanently disabled. In any event plaintiff insists that the basis of the general verdict and the settlement are for present purposes disputed questions of fact.

Although plaintiff's argument has merit, we think he was properly stopped at the threshold. It is at least clear from what was before the court that in order to recover for the alleged breach of contract plaintiff must show that when he sought reinstatement he was physically able to perform the work in question. We hold that in the circumstances of this case plaintiff was estopped from making such an assertion.

Lest there be any misunderstanding as to the scope of what we decide, we emphasize that the "estoppel" we here apply is to be distinguished from the traditional "estoppel in pais". Important prerequisites of that concept are lacking in the present case, for defendant did not believe and rely on plaintiff's statement. In fact, defendant offered much evidence at the trial in an effort to disprove plaintiff's assertions as to his physical condition. Had defendant admitted plaintiff's claim of lengthy or permanent total disability and negotiated a settlement, or litigated, solely on the question of the amount of damages to be paid therefor, it would have been in position to invoke the bar of an estoppel in pais.

Nor is the estoppel relied on here equivalent to "collateral estoppel" as that term is used in the Restatement of Judgments. That concept gives to the determination of actually litigated issues by valid and final judgment conclusiveness in all further litigation between the same parties. Restatement, Judgments, § 63 (1942). Since, on the present record, there is a substantial dispute as to what the former judgment decided about plaintiff's physical condition, collateral estoppel cannot be employed at this stage. If in the tort action there had been a finding of fact or an answer to a specific interrogatory to the effect that plaintiff was disabled either permanently or for some specified period of time, and if final judgment had been rendered thereon, there would be no question but that collateral estoppel would bar either party from relitigating that issue against the other. Even had judgment been entered on the general verdict actually rendered in the tort case, rather than on a subsequent settlement, so that what the judgment determined was identical with what the verdict determined, this case might have been an appropriate one for the use of collateral estoppel.[1]

The "estoppel" of which, for want of a more precise word, we here speak is but a particular limited application of what is sometimes said to be a general

---

1. The District Court stated that "A reading of the record in [the tort action] can leave no doubt in the mind of any reasonable person that the jury's verdict was based substantially on future loss of earning capacity." [107 F.Supp. 623] While we may take this as a finding that the basis of the *jury verdict* is so clear that the trial judge would be justified in withdrawing that question from a jury in the present case, the relevant fact necessary to the invocation of collateral estoppel is the basis of the *judgment*. See Restatement, Judgments, § 45, comment (c) (1942).

rule that "a party to litigation will not be permitted to assume inconsistent or mutual-ly contradictory positions with respect to the same matter in the same or a successive series of suits." II Freeman on Judgments § 631 (5th ed. 1925). Whether the correct doctrine is that broad we do not decide.[2] The rule we apply here need be and is no broader than this. A plaintiff who has obtained relief from an adversary by as-serting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent posi-tions would most flagrantly exemplify that playing "fast and loose with the courts" which has been emphasized as an evil the courts should not tolerate. See Stretch v. Watson, 1949, 6 N.J.Super. 456, 469, 69 A.2d 596, 603, reversed in part on other grounds, 5 N.J. 268, 74 A.2d 597. And this is more than affront to judicial dignity. For intentional self-contradiction is being used as a means of obtaining unfair ad-vantage in a forum provided for suitors seeking justice.

At the same time, in the nature of the problem, it has rightly been pointed out by the Court of Appeals for the District of Columbia that in applying this rationaliza-tion "each case must be decided upon its own particular facts and circumstances." Galt v. Phoenix Indemnity Co., 1941, 74 App.D.C. 156, 120 F.2d 723, 726. The par-ticular facts and circumstances we rely on here are these. Plaintiff asserted in a judi-cial proceeding, and introduced evidence tending to prove, that he was not able and would not be able to work. He claimed damages for this lost ability to earn wages. As a result of that claim, and by the aid of that judicial proceeding,[3] plaintiff ob-tained from defendant a sum of money which by its size considering plaintiff's age and earning record, indicates that it was intended to recompense him for his loss of ability to earn wages for at least a sub-stantial future period.[4] Now he asks the same court to hear him on a claim that less than a month after this compensato-

2. Its applications have been varied. E.g., Michels v. Olmstead, 1895, 157 U.S. 198, 15 S.Ct. 580, 39 L.Ed. 671 (A, who in his action at law against B had successfully interposed objection to B's equitable de-fense, could not, in B's subsequent suit in equity to enjoin A's law action, assert that B's defense should have been set up in the law action); City of Boston v. Nielsen, 1940, 305 Mass. 429, 26 N.E.2d 366 (where N had sued city for damages resulting from defective pavement and N's hospital bill had been excluded from evidence on city's motion on theory that N's husband and not N was liable for it, city was estopped in subsequent suit against N from asserting that she was liable for the hospital bill); Thompson v. Illinois Central R. Co., 1920, 191 Iowa 35, 179 N.W. 191 (plaintiff who had re-covered damages on theory of permanent injury to land caused by defendant's tres-pass could not later bring action against defendant on theory of continuing nui-sance); Krause v. Krause, 1940, 282 N. Y. 355, 26 N.E.2d 290 (husband who had secured out-of-state divorce from first wife was estopped from contesting the validity of that divorce in action by his second wife for support).

3. Regardless of whether the verdict in the tort action may be regarded as a ju-dicial determination, we must recognize that rendition of the $35,000 verdict was a significant factor in the negotiations which led ultimately to a stipulated judg-ment in the amount of $27,750.

4. Obviously we are not in a position to say, on the present record, just how "substantial" a period of time was in-tended to be covered by the settlement. But we can and do infer from the amounts involved that, even making due allowance for wages lost up to time of trial, medical expenses incurred, and compensation for "pain and suffering", the period of time of future wage loss intended to be compensated for both by the verdict and by the settlement was much more than one month. We are not unmindful that in a situation of this type where a greater period of time has elapsed between an ambiguous judgment or settlement and an application for re-instatement, there may be a factual ques-tion as to whether the recovery enjoyed by the plaintiff was intended to compen-sate him for longer than the elapsed pe-riod. Cf. Wilson v. St. Louis-San Fran-cisco Ry. Co., 1952, 362 Mo. 1168, 247 S.W.2d 644. But the fact that the dis-tinction which must be drawn is one of degree rather than of kind does not in any way lessen its force.

ry recovery he was physically rehabilitated and entitled to be restored to duty and pay status by the defendant on peril of a new compensatory recovery for loss of wages from the date of requested reemployment. Not only does plaintiff found successive claims on inconsistent facts, but he now seeks a duplicating recovery, if we are to respect the legal theory of the earlier claim in settlement of which he received a substantial sum. In these circumstances we think it was proper for the District Court to refuse to allow plaintiff to litigate a claim in contradiction of his earlier position.[5]

The judgment will be affirmed.

---

5. Similar results were indicated in two similar cases by the District Court of the Northern District of California. Buberl v. Southern Pacific Co., 1950, 94 F.Supp. 11 (alternative holding); Wallace v. Southern Pacific Co., 1951, 106 F.Supp. 742 (alternative holding).