Mr. & Mrs. Joe AGNEW; Mr. & Mrs. Paul Bilderback; Mr. & Mrs. Samuel Cooper; Mr. & Mrs. Aldo Del Tedesco; Mr. and Mrs. Paul Fox; Mr. & Mrs. Glenn Fulton; Mr. & Mrs. Michael Martin; Mr. and Mrs. William Petry; Mr. & Mrs. James Scott; Mr. & Mrs. Thomas Tasseff; Mr. & Mrs. Robert Weathers; Mr. John Basbagill, Plaintiffs,

v.

The CITY NATIONAL BANK & TRUST COMPANY OF COLUMBUS, Defendant.

No. C–2–76–899.

United States District Court, S. D. Ohio, E. D.

Feb. 27, 1979.

Freeman T. Eagleson, Jr., Columbus, Ohio, for plaintiffs.

Alan L. Briggs, John M. Tobin, Columbus, Ohio, for defendant.

MEMORANDUM AND ORDER

DUNCAN, District Judge.

This cause is before the Court on defendant's motion for summary judgment, extensive memoranda of counsel, and writings accompanying the memoranda.

I

Plaintiffs purchased lots for real estate development in Morrow County, Ohio. The defendant bank holds notes executed by the

plaintiffs, who claim a right of rescission and other relief under the provisions of the Consumer Protection Act, 15 U.S.C. § 1601 *et seq.*; and the Regulations issued by the Board of Governors of the Federal Reserve System, 12 C.F.R. 226.

## II

In 1972 Whetstone Development, Inc. (Whetstone) purchased about 1500 acres in Morrow County, Ohio, and began the development of a rural home project called Candlewood Lake. The land was subdivided into approximately 3000 lots individually priced from $5,000 to $15,000.

Purchasers who desired to finance the purchase of a lot executed a promissory note and contract with Whetstone requiring that payment be made over an eight-year period. Whetstone, then, customarily sold such notes to one of six Ohio banks including the Cleveland Trust Company, Toledo Trust Company, Centran Bank of Akron, Society National Bank of Cleveland, Farmer's Savings and Trust Company of Mansfield, and City National Bank and Trust Company of Columbus. The lot purchaser would make required periodic payments to the particular bank which held his note.

By 1974, Whetstone had sold approximately half of the available lots and was finding itself unable to comply with all the terms of the contracts for sale. Specifically, Whetstone was not able to complete certain planned development projects including access roads and utility services. These difficulties were also of concern to the financing agents for Whetstone, Independence Mortgage Trust (Independence), a real estate investment trust. Hence, the difficulties of performance of the contract obligations were a matter of concern to the purchasers of the lots, and Independence as well as the banks holding the notes. Certain of those lot owners, acting as named plaintiffs, filed a class action suit in the Court of Common Pleas of Morrow County on October 21, 1976, on behalf of all property owners in the Candlewood Lake development seeking damages and equitable relief. Whetstone, Independence, the banks, and others were named as party–defendants. That litigation was resolved by way of settlement and dismissal on December 14, 1976.

Plaintiffs in the instant case are property owners in the Candlewood Lake development who brought an action for damages and equitable relief in this Court on December 17, 1976. Defendant in this case, also a defendant in the abovementioned state court suit, has moved for summary judgment. In support of defendant's motion it is asserted that because of the litigation and settlement in Morrow County Common Pleas Court, plaintiffs' claims are barred by the doctrine of res judicata and settlement and release. Plaintiffs contend that this action is not barred and that the state court judgment was obtained by fraud. In view of the positions of the litigants, it is necessary that this Court carefully review the Court of Common Pleas litigation which was commenced on October 21, 1976.

My review of that litigation convinces me that:

1. The action was maintained as a class action in accordance with Rule 23(b)(1) of the Ohio Rules of Civil Procedure and that the plaintiffs in the case at bar were members of the class as recognized by the Court.

2. Richard Theodore Boehm represented the named plaintiffs and the members of the class.

3. The parties to the state court lawsuit reached a tentative settlement agreement of which that court issued notice of proposed compromise settlement on November 12, 1976. The notice stated that a hearing would be held on December 14, 1976, at 1:30 p.m. to determine whether or not the proposed settlement should be approved by the Court. The notice contained a general description of the proposed compromise settlement. The proposed settlement included a provision whereby the six banks would pay almost $1,000,000 to certain lot owners, the lot owners were to purchase the mortgage of Inde-

pendence and also purchase unsold lots. The specific terms of the agreement were to be filed in Court no later than 1:30 p. m., December 1, 1976.

4. On November 12, 1976, the Court of Common Pleas issued a notice to all class members stating that, on December 14, 1976, all members of the class would have the opportunity to be heard on whether the conditional order certifying the class action should be made final. The notice also stated that members of the class could appear and express their positions as to whether the named counsel for the class would be a proper representative of the class.

5. The November 12 notices were delivered to all the plaintiffs in the case at bar and to counsel for those plaintiffs.

6. A proposed settlement was filed in the Court of Common Pleas before December 1, 1976. This document provided that changes to it could be prepared by any party. This proposal included the following language:

18. *Adjudication and dismissal of claims*: Complete settlement and termination of the disputes between the parties is the principal object and consideration of this class action.

.    .    .    .    .

Except as specifically set forth in this Proposed Compromise Settlement, in consideration for the undertakings by each party of its duties under this Proposed Compromise Settlement, *all plaintiffs and all members of plaintiffs' class release and forever discharge all defendants* and all defendants release and forever discharge all plaintiffs and all members of plaintiffs' class, and defendants release and forever discharge all other defendants *from any and all claims, lawsuits, or causes of action which they ever had or may have relating in any way to Candlewood Lake, including but not limited to all claims made in plaintiffs' complaint*

*and/or defendants' answers and/or counterclaims,* any claims arising out of any alleged common law violations or breaches, contractual violations or breaches, specific statutory violations including, but not limited to, all antitrust laws, Interstate Land Sales Registration Act violation, State or *Federal Truth-In-Lending violations,* State or Federal Securities Act violations and/or any violation or breach giving rise to any legal or equitable remedy. All parties hereto agree that the banks are holders in due course of the promissory notes and any and all claims or defenses against payment of the notes which have been or could have been asserted at any time against these banks or anyone, are now extinguished and forever barred. (Emphasis added.)

7. On December 3, 1976, the specific proposed settlement was mailed to plaintiffs' counsel. Plaintiffs herein do not claim that they were not aware of the nature of the proposed settlement.

8. On December 6, 1976, plaintiffs' counsel wrote to the defendant bank asserting a right to enforce a right of rescission pursuant to Section 226.1 *et seq.* of Title 12, Chapter II, part 226, 12 C.F.R. 226.

9. On December 8, 1976, in state court the defendant banks filed an answer and counterclaim. The counterclaim requested that the Court, *inter alia,* declare the notes they held valid, and in full compliance with Federal Regulation Z, and all state and federal truth in lending statutes and regulations.

10. At the December 14, 1976, hearing Common Pleas Court Judge Weller asked, "Now, is anyone present represented by counsel who wishes to introduce any evidence in contradiction or in opposition to the evidence that has been submitted on the three principal areas of consideration for the Court, first, whether or not the conditional order previously made

should on this date, or as a result of this hearing at an earlier date subsequent hereto be made an unconditional order." Neither plaintiffs in this case nor their counsel objected to the final order of certification of the class which had been conditionally certified on November 10, 1976.

11. At the December 14, 1976, hearing the Court asked, "Does anyone wish to introduce evidence to the ancillary question before the Court as to whether or not Mr. Boehm should be authorized by this Court to represent all members of the plaintiff class, which includes, of course, all of the lot owners?" Neither plaintiffs in this case nor their counsel made any objection.

12. At the December 14, 1976, hearing the Common Pleas Court Judge asked, "Does anybody wish to introduce evidence contra to the approval of that proposed compromise?" Neither plaintiffs or their counsel made any objection.

13. At the December 14, 1976, hearing plaintiffs in this case (members of the class in the state court action) had, through their counsel, moved to be withdrawn as members of the certified class in the state court but that motion was denied by that court. In that motion plaintiffs requested "that the Court stay any further disposition of the lots allegedly purchased by the above listed applicants until such time as any rights they may have acquired under Section 226.9, 12 C.F.R. 226, 15 U.S.C. § 1640 et sequitua, may be adjudicated in Federal District Court."

14. By a journal entry dated December 14, 1976, the Court of Common Pleas overruled the above mentioned motion. The Court stated:

Upon due consideration of the law and facts, it appears as if this action is brought under Rule 23(B)(1), and that it is proper that the action be brought under (B)(1) and thereunder there is no right to be excluded or dismissed from the plaintiffs' class. The moving parties offered no evidence suggesting any reason why this action is not properly brought under Rule 23(B)(1). It is, therefore, ORDERED, ADJUDGED and DECREED that the motion filed on behalf of:

Mr. and Mrs. Joe Agnew
Mr. and Mrs. Paul Bilderback
Mr. and Mrs. Samuel Cooper
Mr. and Mrs. Aldo Del Tedesco
Mr. and Mrs. Paul Fox
Mr. and Mrs. Glenn Fulton
Mr. and Mrs. Michael Martin
Mr. and Mrs. William Petry
Mr. and Mrs. James Scott
Mr. and Mrs. Thomas Tasseff
Mr. and Mrs. Robert Weathers
Mr. John Basbagill
be and hereby is overruled.

15. These plaintiffs did not seek reconsideration of the judgment of the Court of Common Pleas and did not appeal to the Court of Appeals.

16. The settlement as approved by the December 14, 1976, order of the Court of Common Pleas specifically mentions truth in lending in the following context:

8. *It is further ORDERED, ADJUDGED and DECREED that the promissory notes* and the mortgages given to secure the promissory notes, all of which were transferred or agreed to be transferred to defendants Centran Bank of Akron, The City National Bank & Trust Company of Columbus, The Cleveland Trust Company, Farmer's Savings & Trust Company, Society National Bank of Cleveland and/or Toledo Trust Company from Whetstone Development, Inc., *are found to be* free of all defects, non–usurious, negotiable, *executed after full compliance with Federal Truth-In-Lending laws and Regulation Z thereunder,* all state lending laws and all other state, federal or common laws of any kind and shall be

fully enforceable in accordance with the terms of said notes and said banks are found to be holders in due course of said promissory notes and are found to hold said notes free of any claims or defenses which a borrower might have against Whetstone Development, Inc., its employees, representatives or agents, or any other party defendants named in the complaint of plaintiffs excepting the defenses or personal bankruptcy or payment made to said bank.

17. The instant lawsuit was filed December 17, 1976.

Plaintiffs' counsel claims that the banks in the suit in Common Pleas Court connived, conspired ... and contends that plaintiffs in the instant case are "not interested in upsetting the Morrow County Judgment; but certainly they prove its validity as to Res Judicata." More specifically plaintiffs oppose defendant's motion for summary judgment on the following grounds:

1. In a nondiversity action involving issues resulting from Federal Law, that law is controlling as to the applicability of the doctrine of res judicata.

. . . . .

4. Defendant bank led Federal plaintiffs Agnew, et al. to believe that the action filed in Federal District Court on February 9, 1976, was for their benefit to recover the monies that they had paid defendant bank for the defective and worthless title to lots defendant bank knew or should have known were fraudulently sold as being free and clear of encumbrances and is now estopped from claiming a defense that it attempted to superimpose during the period of time gained by these self-serving misrepresentations.

5. Defendant bank knew at all times, from August of 1976 on, that Federal plaintiffs Agnew, et al. did not want to continue the farce that defendant bank and the other conspirators were perpetrating, and willfully and purposefully led them to believe that defendant bank was going to settle their claim for rescission and return their purchase money.

6. As soon as Federal plaintiffs realized of their own knowledge that defendant bank, the five other banks that had participated, the developer, the mortgage trust company, the original land owners and those lot purchasers who had title and title insurance policies for their lots, were conspiring through the sham class action to force them to accept delivery in some instances three years after the fact and thereby force them into a contractual relationship to which they had no privity, Federal plaintiffs took advantage of the escape clause in the December 1, 1976, Proposed Compromise Settlement. They filed a motion in the Morrow County Court seeking dismissal from the class action to pursue their rights in the Federal District Court in Columbus in accord with the relief afforded them under the Truth in Lending acts and other statutes enacted by Congress and implemented by the Board of Governors of the Federal Reserve System and other regulatory agencies.

7. The Truth In Lending dispositions written into the Judgment Entry in the Common Pleas Court in Morrow County that alleges to reflect the litigation and adjudication of the issues now before this Federal Court were not raised in the complaint filed in the alleged class action in the Morrow County Court on October 21, 1976; and it was not until the defendant bank discovered that while the Proposed Compromise Settlement as submitted on December 1, 1976, did have reference to the Truth In Lending issues, there was no pleading to support same; and defendant bank filed an answer and a counterclaim on December 8, 1976, attempting to set up the issues of Truth In Lending, whether the banks were holders in

due course and other such matters; all of which was never controverted, litigated or plead to by class action plaintiffs and the existence of which was not made known to counsel for Federal plaintiffs Agnew, et al. until defendant bank attached it to its present memorandum. This pleading was filed by the bank two days after counsel for Federal plaintiffs had served a confirming notice of rescission on Vice President Krueger of defendant bank and advised him of the election to bring his clients' action in the Federal District Court in Columbus, and six days before the Morrow County Court entered judgment on a completely revised and unpublished or noticed set of compromise provisions.

8.  Plaintiffs' action in this Court is predicated on issues of law and fact which have never been considered, controverted or litigated in the Morrow County Court and of consequence, by Federal law the Morrow County Court judgment is not bar to the matters brought to issue by the complaint herein.

In addition plaintiffs' counsel suggests that because of full and tedious hours and repeated demands of patience and energy of the Judge of the Court of Common Pleas that somehow his confidence and reliance on counsel in this instance have resulted in "injustice and unjustness." Although plaintiffs' counsel uses language which implies the existence of facts of a sinister nature, the Court believes there is no genuine dispute concerning the operative facts. Therefore, this case is amenable to disposition by summary judgment.

In early 1976 the defendant bank was or reasonably should have been aware of plaintiffs' interest in and displeasure with their lot purchases and the events that followed. In February 1976 the defendant bank and the Farmers Savings & Trust Co. sued Whetstone and Independence in this Court (Case No. C–2–76–88). Plaintiffs and their counsel understandably were interested in

this litigation with the sanguine expectation that the case would bring about some relief for their problems. An examination of the correspondence between counsel for the plaintiffs and the defendant bank reveals that plaintiffs continually manifested their interest in procuring rescission of the transactions in which they had become involved. However, there is no document or writing of record which reasonably indicated that the defendant bank agreed to forego collection on notes executed by plaintiffs which it held, or otherwise lulled plaintiffs into believing that the federal case (Case No. C–2–76–88) would provide adequate relief for that problem.

In September 1976, plaintiffs William and Mary Petry, also plaintiffs in the instant case, sued the City National Bank and Trust Company in the Court of Common Pleas, Franklin County, Ohio (Case No. 76CV–09–3754) and were represented by the same counsel as represents all the plaintiffs herein. In that lawsuit those plaintiffs sought rescission of their lot purchase and other damages. Next, on October 19, 1976, a letter from defendant's counsel to plaintiffs' counsel informed him that negotiations toward an overall solution to the problems at Candlewood Lake were being pursued. As of that time it would appear that (1) plaintiffs' counsel was aware that the bank was opposed to a rescission of the transaction, and (2) the bank was attempting to negotiate a settlement which impliedly would be inclusive of the interests of plaintiffs William and Mary Petry.

After a review of all matters of record, this Court is unable to identify how the defendant bank's institution and later dismissal of its February 1976 action in this Court caused these plaintiffs to reasonably assume a position where they depended upon that action for relief from their problems. They were represented by counsel, but did not attempt to become parties to that Federal Court litigation. Furthermore, there is nothing in the negotiations between the parties and their counsel that serves to *estop* defendant bank from the benefit of a favorable ruling on its motion

for summary judgment in the case at bar. Moreover, there is no reason that plaintiffs could not have presented such matters to the judge of the Court of Common Pleas of Morrow County as in support of their motion to be released from the class, for instance.

No facts are presented from which reasonable inferences can be drawn establishing the existence of fraud or conspiracy among banks and others to defraud plaintiffs. The documents of record do not support such a claim. If such evidence does exist, affidavits, depositions, or other papers could have been presented. Rule 56, Fed.R.Civ.P.

The Court is mindful that class actions must be viewed cautiously since important due process rights often are at stake. The compromise agreements of class actions require even closer examination. However, in a proper case, class action procedures are an extremely appropriate mode of litigation.

These plaintiffs were given adequate notice that they were members of the proposed class, and notice of the lawyer who proposed to represent the class. The plaintiffs do not herein contend that there was a lack of jurisdiction in the state court, although they claim that that court improperly disposed of truth in lending matters. The issues before the Court of Common Pleas appear to satisfy the requirements of Rule 23, Ohio Rules of Civil Procedure.

■ As a general rule a final judgment on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties, and such a judgment operates as a bar to a later action involving the same claim. Principles of res judicata apply to non-party members of a class. See *McDonald v. Medical Mutual*, 41 Ohio Misc. 158, 324 N.E.2d 785 (1974). The fact that plaintiffs unsuccessfully moved in the state court proceeding to be excluded from the class does not abate the res judicata effect of the state court judgment. Compromise or consent judgments properly entered are res judicata of the matters then reduced to judgment. See *Schlegal Manufacturing Co.*

*v. USM Corp.*, 525 F.2d 775 (1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976); *Horne v. Woolever*, 170 Ohio St. 178, 163 N.E.2d 378 (1959).

■ This Court, then, is obligated to give state court judgment the same full faith and credit as it would be given in the state which entered the judgment. If the judgment would be res judicata in Ohio, then it is entitled to the same effect here. As the Sixth Circuit Court of Appeals has recently stated: "The doctrine of res judicata is not discretionary in nature but rather, is embodied in a congressional mandate that the courts must conscientiously follow." *James v. Gerber Products et al.*, 587 F.2d 324, 327 (6th Cir. 1978). That congressional mandate clearly binds federal courts to proceedings of state courts:

> The judicial proceedings of any court of any ... State, Territory, or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. 28 U.S.C. § 1738.

There is absolutely no evidence before the Court that tends to rebut the strong presumption that the Judge of the Court of Common Pleas properly performed his duty. Conversely, the record attests that he required that all proposed members of the class have notice of the settlement proposal; he provided for a hearing to consider objections to the composition and certification of the class and its legal representation. Plaintiffs' last minute attempt to withdraw from the class was promptly considered and denied. The stated basis for the request for withdrawal was not complex and it is well within reason that the trial judge could decide the matter on the same day it was filed.

This Court has reviewed a transcript of the hearing on the proposed settlement held before the Common Pleas Judge on December 14, 1976. A witness was called who gave his testimony concerning the problems

at Candlewood Lake and the proposed settlement. The Court interrogated the witness in an effort to assure himself that he understood the facts of the case. The hearing was with notice to plaintiffs, it was open, and comments from concerned persons were called for. Plaintiffs did not respond.

These plaintiffs were or reasonably should have been aware of the important basic provisions of the proposed settlement. All of the matters complained of herein could have been raised in the Court of Common Pleas. The principle of res judicata applies to matters which could have been raised but were not raised in a court with jurisdiction.

Plaintiffs correctly point out that the language of the proposed settlement as filed on December 1, 1976, differs from that finally approved after the hearing on December 14, 1976. The December 14, 1976, order deleted the following language present in the earlier agreement:

> All Candlewood Lake lot owners must be found to be members of the plaintiffs' class, so that all will receive the benefits of the judgment, and in exchange, will be bound as parties with the resulting respective rights, duties and obligations set out in this Proposed Compromise Settlement.

Apparently plaintiffs view the deletion of this language as a part of the scheme to mislead them. This matter could have been presented to the Common Pleas Court on December 14, 1976, for its resolution. The defendant argues that the above language refers to the class of plaintiffs as a whole rather than any individual dissenting class members. The Court believes defendant's position in this respect to be correct.

Paragraph 18 of the proposed settlement filed on December 1, 1976, specifically set forth the proposed release of "State or Federal truth in lending violations." If plaintiffs sought to oppose such a proposal, they cannot now be heard to say that they were unaware of it.

In sum, this case is a rather classic example of the utility of the doctrine of res judicata. Plaintiffs represented by counsel had every opportunity to be heard in the Court of Common Pleas. After an adverse ruling on a motion to withdraw from the class was overruled, and no appeal, the state court judgment is binding.

Plaintiffs' collateral attack on that judgment falls far short of the brand of clear and convincing evidence necessary for overturning the state court action. The arguments of significance which plaintiffs advance here should have been made in the Ohio Court of Appeals or in a motion to the Court of Common Pleas for reconsideration. The truth in lending claims were the subject of state court litigation. The fact that such claims were not litigated as plaintiffs contend they should have been cannot displace the force of res judicata as to those claims, given the terms of the settlement.

Having reached the conclusion that plaintiffs' claim for relief is barred by the fact that they have been litigated and determined, or could have been litigated and determined in the state court proceeding, the defendant's motion for summary judgment is GRANTED.

In view of the above action on the res judicata issue, it is not necessary to address defendant's other contentions.

It is so ORDERED.