692 F.2d 89
 Barbara GARCIA, Plaintiff/Appellant,
v.
Cecil ANDRUS, as Secretary of the United States Department
of the Interior; The United States Department of
the Interior; Earl R. Platt and Buena
Platt, husband and wife,
Defendants/Appellees.
 No. 81-5417.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1982.
Decided Nov. 12, 1982.
 
 Katherine Ott, Vlassis & Ott, Gary Verburg, Phoenix, Ariz., for plaintiff/appellant.
 Mitchell D. Platt, Platt & Hall, St. Johns, Ariz., for defendants/appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before HUG, TANG, and PREGERSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 Appellant Barbara Garcia and appellee Earl Platt are tenants in common of real property known as the Garcia Ranch ("the ranch"). Garcia owns a life estate and her children a remainder in fee in an undivided one-third interest in the ranch; Platt owns in fee simple an undivided two-thirds interest in the ranch. In 1962, Garcia leased her life estate to Platt. The lease expired on October 1, 1975, and was not renewed.
 
 
 2
 The Taylor Grazing Act, 43 U.S.C. Sec. 315m, authorizes the Secretary of the Interior to issue grazing leases on federal grazing lands to qualified applicants.[1] To qualify, an applicant must be engaged in the livestock business and own or control "base property" (43 C.F.R. Sec. 4110.1), that is, land or water which serves as a base for a livestock operation (43 C.F.R. Sec. 4100.0-5(g)).
 
 
 3
 An owner or lessee of base property contiguous to federal grazing land has a "preference right" to a federal grazing lease. See 43 U.S.C. Sec. 315m. Such a right gives owners, homesteaders, lessees, or other lawful occupants of contiguous land a preference to receive grazing leases over applicants who do not own contiguous land. Since the ranch is contiguous base property, it qualifies as preference land under section 315m.
 
 
 4
 Using the ranch as preference land, Platt obtained a grazing lease on federal land contiguous to the ranch in 1962. He qualified for a preference right to such a lease because he owned a two-thirds interest in the ranch and controlled by lease Garcia's life estate in the other one-third. Platt's federal grazing lease expired in February 1977.
 
 
 5
 In January 1977, both Garcia and Platt submitted grazing lease applications to the Bureau of Land Management. Platt sought to renew his grazing lease on all of the federal grazing land contiguous to the ranch, even though his lease on Garcia's one-third interest in the ranch had previously expired. Garcia sought only a one-third interest in the use of the contiguous federal grazing land--an interest commensurate with her life estate in a one-third interest in the ranch.
 
 
 6
 The District Manager of the Bureau of Land Management found that both Garcia and Platt were qualified lease applicants and, based on their respective interests in the ranch, granted a federal grazing lease for one-third use to Garcia and two-thirds use to Platt. Platt appealed that decision to the Interior Board of Land Appeals (IBLA).
 
 
 7
 The IBLA submitted the dispute to an Administrative Law Judge for fact-finding and a recommended decision. After the Administrative Law Judge recommended that the IBLA affirm the District Manager's decision, the IBLA nevertheless reversed the District Manager and renewed Platt's grazing lease on all of the contiguous federal land.
 
 
 8
 The IBLA based its decision on section 402(c) of the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. Sec. 1752(c), a provision that had not been presented to the Administrative Law Judge.[2] That provision grants to the holder of a federal grazing lease priority to renew his lease before it may be offered to other qualified applicants. The IBLA found that Platt and Garcia were conflicting qualified applicants and that Platt, as a prior leaseholder, had priority over Garcia to renew his grazing lease to the full extent of the prior lease.
 
 
 9
 The IBLA denied Garcia's petition for reconsideration, and she filed suit in district court pursuant to the Administrative Procedure Act, 5 U.S.C. Secs. 701-706, for review of the IBLA's decision. The court affirmed the IBLA's decision, concluding that Platt had priority to renew the grazing lease to the full extent of his prior lease. Garcia appeals.[3]
 
 
 10
 Because we agree with the District Manager that Garcia and Platt are entitled to share in a federal grazing lease in proportion to their respective cotenancy interests, we reverse the decision of the district court affirming the IBLA's ruling.
 
 DISCUSSION
 
 11
 As she did in the district court, Garcia argues that Platt is not entitled to renew his full entitlement under the prior lease in light of 43 C.F.R. Sec. 4125.1-1(i)(4). That regulation provides that a federal grazing lease "will be terminated in whole or in part because of loss of control by the lessee of non-Federal lands that have been recognized as the basis for the grazing [lease]."[4] (Emphasis added.) Garcia contends that Platt lost control of one-third of the base property--and thus lost his priority to renew the federal grazing lease as to that one-third--when his lease on her life estate in the ranch expired in 1975.
 
 A. Control of the Ranch
 
 12
 As a tenant in common with Garcia, Platt had the right to possess the whole property. See 4A R. Powell, Powell on Real Property p 601 (1981). The district court equated that right of possession to the statutory concept of "control" and held that Platt controlled the entire ranch. It is true, as the district court noted, that the percentage of ownership has nothing to do with the right of possession. That is, a one-third owner has the right to possess the entire parcel, just as the two-thirds owner does.
 
 
 13
 However, numerous other elements of control do follow the percentage of ownership. For example, if a cotenant obtains a loan and mortgages the property, he is only able to mortgage his percentage ownership interest. If one cotenant rents the whole property to a third party, he must share the proceeds with his cotenants in accordance with their respective percentages of ownership. The same rule applies to the proceeds of mining activity on cotenancy property. Thus, sharing of benefits that flow from the land, other than the right of possession of each cotenant, generally follows the percentage of ownership in the land. See generally 4A R. Powell, Powell on Real Property; 4 G. Thompson, Thompson on Real Property 137-97 (1979); II American Law of Property 46-48 (1952). It is logical to conclude that the meaning of "control" as used in the federal grazing regulation is in accord with these other cotenant rights rather than with mere possessory rights. However, the proper allocation of federal grazing land is not necessarily determined by state cotenancy laws, but by the applicable federal statutory and regulatory scheme and the cases decided thereunder.
 
 
 14
 In Mark X. Trask, 32 IBLA 395 (1977), the holder of an expiring federal grazing lease sold all contiguous portions--but retained ownership of noncontiguous portions--of the original preference land. The IBLA held that, since the federal grazing leaseholder no longer controlled contiguous preference land, he did not have priority to renew his federal grazing lease under section 1752(c).
 
 
 15
 While Trask is factually distinguishable from the instant case--in that Platt lost his lease on only an undivided one-third of the contiguous land--its reasoning applies with equal force to this case. We conclude that, whether one sells part of his preference land or loses a lease thereon, the seller or lessee loses "control" of that part of the preference land. See 43 U.S.C. Sec. 315m. Therefore, we hold that Platt lost control of one-third of the preference land when his lease with Garcia expired in 1975.
 
 B. Platt's Priority Right
 
 16
 In order to qualify for section 1752(c) priority, a holder of an existing grazing lease must comply with all applicable rules and regulations. One such regulation, effective when Platt's lease with Garcia expired in 1975, provided for termination of a federal grazing lease if the leaseholder lost control of the preference land. 43 C.F.R. Sec. 4125.1-1(i)(4). The regulation also provided that, in the event partial control of the preference land was lost, then the grazing lease would be terminated "in part." Under this regulation, therefore, Platt's existing grazing lease was terminated in part when Platt lost partial control of the preference land in 1975.
 
 
 17
 We do not, however, rest our decision solely upon section 4125.1-1(i)(4). Congress, through this and other statutory and regulatory provisions, established both a preference right, giving applicants who control contiguous land the right to receive a lease over other applicants (43 U.S.C. Sec. 315m)), and a priority right, giving the holder of an expiring lease the right to renew it ahead of other qualified applicants (id. Sec. 1752(c)). Since a preference right to receive a grazing lease requires control of the contiguous (preference) land (see Sec. 315m), and a priority right depends upon retention of that control (see Sec. 1752(c)), a priority right exists only to the extent that the owner or lessee maintains control of the original preference land. Hence, the applicant asserting priority on all of the federal land encompassed under an expiring federal grazing lease must have retained control of all of the original preference land. See 43 U.S.C. Sec. 1752(c); 43 C.F.R. Sec. 4125.1-1(i)(4).
 
 
 18
 Therefore, we conclude that a federal grazing leaseholder who loses a leasehold interest in a part of the preference land loses control to the same extent, and thus loses priority to renew his grazing lease in a proportionate amount. Consequently, Platt has priority to renew his grazing lease only to the extent that he retained control of the original preference land. This interpretation is consistent with Trask and is supported by the legislative framework establishing preference and priority rights.
 
 C. Garcia's Preference Right
 
 19
 Platt contends that, under Grabbert v. Schultz, 80 I.D. 531, 12 IBLA 255 (1973), Garcia does not have the requisite control of the ranch to qualify for a federal grazing lease. In Grabbert, the base property was owned by at least thirty-four different cotenants in undivided fractional interests. Appellee Schultz, who owned a 4.4% interest, sought a preference right to a federal grazing lease based on the fact that he had obtained grazing privileges from owners of an additional 33.8% of the base property. The IBLA, without stating a clear statutory or regulatory basis, held that "one who does not have an undivided interest in excess of 50% of the alleged preference lands may not be said to 'control' that land within the meaning and intent of the statute." Id. at 533. Accordingly, Platt argues that since Garcia's interest in the ranch does not exceed fifty percent, she does not control the preference land and, therefore, she does not have a preference right under section 315m.
 
 
 20
 The Taylor Grazing Act, the regulations promulgated thereunder, and the Act's legislative history do not mandate an arbitrary fifty percent ownership requirement. In addition, Grabbert is factually distinguishable from the instant case. There the lease applicant asserting control of the base property was a cotenant who owned an interest of less than five percent; his only other rights to the property were derived from permissive grazing leases from other cotenants, under which he was a mere tenant at will. In the instant case, in contrast, the interest of each cotenant is firmly established--one-third in Garcia and two-thirds in Platt. We hold, therefore, that "control" among cotenants competing for a preference right to a federal grazing lease is not dependent on majority ownership but rather is established in the ratio of their respective cotenancy interests.
 
 D. Judicial Estoppel
 
 21
 Platt also contends that the doctrine of judicial estoppel bars Garcia from claiming that Platt does not control the entire ranch. One form of judicial estoppel prevents a party from advancing inconsistent propositions in different judicial proceedings. Platt argues that Garcia, by seeking rents in the state court partition proceeding, has impliedly admitted that Platt has a valid lease on Garcia's one-third interest in the ranch and that Platt thus has control over the entire ranch. Consequently, Platt argues, Garcia cannot take the inconsistent position in the federal suit that Platt does not lease (and therefore does not control) her one-third interest in the ranch.
 
 
 22
 Platt's argument is without merit. While the proof required to show judicial estoppel differs among the circuits (compare Ellis v. Arkansas Louisiana Gas Co., 609 F.2d 436 (10th Cir.1979), with Scarano v. Central Railroad Co. of New Jersey, 203 F.2d 510 (3d Cir.1953), and Texas Co. v. Gulf Refining Co., 26 F.2d 394 (5th Cir. 1928)), all courts agree that judicial estoppel bars only inconsistent positions.
 
 
 23
 The state court proceeding is for partition of the ranch. In that suit, Garcia is claiming damages for unlawful ouster, which are to be set off against the value of Platt's improvements to the property. The damages Garcia seeks for ouster are measured by her proportionate share of the fair rental value for the use and occupation of the land from the time of ouster, see Zaslow v. Kroenert, 29 Cal.2d 541, 176 P.2d 1 (1946), and are not based upon an implied lease or upon any other theory inconsistent with her position in the instant case. Thus, Garcia's claim is not barred by the doctrine of judicial estoppel.
 
 CONCLUSION
 
 24
 For the foregoing reasons, we conclude that the District Manager was correct in rejecting Platt's application as to one-third of the federal grazing privileges and in awarding that one-third to Garcia. Therefore, we reverse the decision of the district court affirming the IBLA's ruling.
 
 
 
 [1]
 43 C.F.R. Sec. 4100.0-5(n) defines a grazing lease as "a document authorizing use of the public lands outside grazing districts (public lands administered by a District Manager) under section 15 of the act [43 U.S.C. Sec. 315m] for the purpose of grazing livestock." 43 U.S.C. Sec. 315m provides that: "The Secretary of the Interior is further authorized, in his discretion ... to lease any such lands for grazing purposes, upon such terms and conditions as the Secretary may prescribe ...."
 
 
 [2]
 43 U.S.C. Sec. 1752(c) provides in part: "So long as ... (2) the permittee or lessee is in compliance with the rules and regulations issued and the terms and conditions in the permit or lease specified by the Secretary concerned ... the holder of the expiring permit or lease shall be given first priority for receipt of the new permit or lease." (Emphasis added.)
 
 
 [3]
 Garcia also filed a partition action in Arizona state court. This action is pending and will be discussed below
 
 
 [4]
 Platt's lease with Garcia expired in October 1975. Garcia submitted her application for a federal grazing lease in January 1977, and Platt his application for renewal in February 1977. Section 4125.1-1(i)(4) became effective in 1970, but was repealed effective August 4, 1978. See 43 Fed.Reg. 29,058 (1978) (proposed 42 Fed.Reg. 35,334 (1977)). This regulation was in effect when Platt's lease with Garcia expired, and when Platt and Garcia applied for federal grazing leases. Therefore, the regulation applies to this case