In re Dorothy Lee HAYNES, a/k/a
Muffin Haynes, a/k/a Dorothy L.
Haynes, Debtor.

Duane J. DWYER, an individual, Motor
Holidays Ltd., a California Corp., Mo-
tor Holidays Ltd., a Delaware corp.,
Appellant,

v.

Dorothy Lee HAYNES, John I.
Wheatley, Margi Wheatley, and
David Gill, Trustee, Appellees.

BAP No. CC–87–1343 VJMe.
Bankruptcy No. LA84–10825JA/RM.
Adv. No. LA84–52253BR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 14, 1988.

Decided April 11, 1989.

Thomas J. Leanse, Pepper, Hamilton & Scheetz, Los Angeles, Cal., for appellees.

Before VOLINN, JONES and MEYERS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

Duane J. Dwyer (Dwyer) appeals from a judgment in favor of the bankruptcy trustee, preventing his avoidance of (i) his pre-petition conveyances of realty to the debtor and (ii) the ratification of a subsequent state court settlement, confirming the debtor's entitlement to the properties. Dwyer, representing himself, questions the validity of the state court settlement and of the bankruptcy court's reliance on the state court proceedings when ruling in favor of the trustee on cross motions for summary judgment in actions to void the conveyances and settlement as fraudulent conveyances and/or preferences. We affirm the ruling below, and conclude that the settlement and the parties' conduct outside of court consistent with the settlement while attacking the settlement in court estop Dwyer from contending that he retains any interest in the property.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. State Court Litigation

Dwyer and debtor Dorothy L. "Muffin" Haynes (Haynes) had a personal and business relationship. On November 23, 1974, Dwyer conveyed by deed to Haynes two parcels of southern California residential real estate. The conveyances were recorded in 1975. Haynes also acquired stock and various other interests in Dwyer's business of leasing motor homes. The business was conducted through two corporations, both called Motor Holidays, Ltd., incorporated in California and Delaware.

In 1980, Dwyer sued Haynes and others in the Los Angeles Superior Court to recover *inter alia* title to, and possession of, the properties. Dwyer alleged that Haynes held the properties in trust for him.

The matter was tried partly to the court and partly to a jury. After the decision and verdict were reached (the record is unclear as to the nature and extent thereof), the parties on December 23, 1982, decided to resolve the matter by agreement. Haynes and Dwyer were each represented by lawyers. The terms of the settlement, stated on the record before the trial judge, contemplated that the legal and beneficial ownership of the real estate would be confirmed in Haynes. Additionally, Dwyer would pay Haynes $49,000 and then take full ownership and control of the Motor Holidays stock.

The specific terms of the agreement were recited on the record. After each term was stated by counsel, the court asked Haynes and Dwyer individually if the term was understood, and also, if agreeable. All answers were "yes." The judge also stated more than once that the settlement fully and finally resolved the issues concerning the real estate and the corporations; that it cut off any further litigation or appeal. The parties each affirmed their understanding of the binding effect of the settlement.

The parties contemplated a written settlement agreement, which would become final after the court ruled on another matter, involving other parties, at the next scheduled hearing on January 14, 1983. Additionally, the parties planned to draft and sign an injunction, prohibiting certain disclosures and conduct, as well as various releases.

When the parties returned on January 14, 1983, Haynes moved successfully to discharge her lawyer and represent herself. None of the documents contemplated at the earlier hearing had been drafted and signed. The minute order for January 14 reflects that the court approved the settlement articulated at the hearing on December 23, 1982. We have not been provided with any transcript of the January 14 hearing.

Notwithstanding the lack of written agreements, it is undisputed that Haynes thereafter remained in possession and control of the real properties, and transferred

to Dwyer in December, 1982, all her stock in Motor Holidays. She thereby performed her part of the settlement with Dwyer's acquiescence.

### B. Bankruptcy Court Litigation

On March 4, 1983, Dwyer and the two Motor Holidays corporations each filed for relief under Chapter 11. On April 22, 1983, the cases were consolidated and Max H. Rush (Rush) was appointed as the Chapter 11 trustee for the consolidated estates.

On May 23, 1984, Haynes filed under Chapter 7. Appellee Gill was appointed on August 1, 1984, as the Chapter 7 trustee of the Haynes' estate.

When Haynes' bankruptcy was commenced, she still retained control of the properties obtained from Dwyer. However, she had earlier executed deeds on January 13, 1983, later recorded respectively on January 21 and April 8, 1983, conveying the properties to her brother, John I. Wheatley.

Dwyer and his trustee Rush commenced an adversary proceeding in Haynes' case against Haynes, her trustee Gill, and Wheatley and his wife to set aside Dwyer's conveyances of the properties to Haynes, the state court ratification of the conveyances, and Haynes' conveyances to Wheatley as fraudulent conveyances and/or preferences. They alleged that the initial conveyances by Dwyer to Haynes were made to defraud his creditors.

Gill answered and counterclaimed against Dwyer and Rush. He also filed a cross-claim against Wheatley to set aside Haynes' conveyances of the real property as fraudulent.

Rush with Dwyer filed a motion for summary judgment. Gill's cross-motion followed. Gill's motion was granted.

On July 26, 1985, the court entered its Findings of Fact and Conclusions of Law in which it found *inter alia* that the December 23, 1982, state court settlement entered into by Dwyer and Haynes was a valid, final judgment under California law, binding on Dwyer and Haynes as a matter of collateral estoppel; that Dwyer's transfers of the real property to Haynes were per-

fected in 1975, and they were not voidable fraudulent conveyances or preferences. Final judgment was delayed, pending resolution of Gill's claims against Wheatley.

### C. Return to State Court

On October 24, 1985, Haynes, despite her bankruptcy, through new personal counsel applied to the Los Angeles Superior Court for relief from the December 23, 1982, settlement and to transfer the properties back to Dwyer. She asserted that her former lawyer had compelled her to perjure herself in the earlier state court proceedings in order to keep the properties.

Gill intervened and opposed the motion, contending that the bankruptcy court had exclusive jurisdiction over the real property under 11 U.S.C. §§ 362 and 541. The state court agreed and denied Haynes' motion.

On or about March 13, 1986, Haynes in *pro per* refiled substantially the same motion, arguing additionally that the state court had jurisdiction due to her bankruptcy discharge. Gill again opposed.

Then, also through new personal counsel, Dwyer filed his own motion and memorandum in support of the relief sought by Haynes. Dwyer contended that the December 23, 1982, settlement was neither a binding, nor final judgment because it had not been documented in a writing signed by the parties. Additionally, he argued that the state court could act because Haynes had received her discharge; the bankruptcy court had not considered the validity of Dwyer's transfers; the bankruptcy trustees were not parties to the 1980 state court action; and the state court action was commenced before the bankruptcy court adversary was filed.

On April 23, 1986, the state court judge, who had presided over the parties' dispute in 1982 and 1983, denied Haynes' motion on three grounds, asserting that each were independent of the other: (1) the court lacked subject matter jurisdiction; (2) Haynes failed, mainly because of her lack of credibility, to establish any grounds upon which the court should set aside any judgment or the December 23, 1982, settlement; and (3) the parties' subsequent con-

duct estopped them from claiming any rights inconsistent with the December 23, 1982 settlement. Dwyer appealed.

### D. Return to Bankruptcy Court

Gill successfully sought sanctions against Dwyer and Haynes in the bankruptcy court for pursuing relief in the state court. The court also ordered Dwyer to dismiss his appeal of the state court's April 23, 1986, rulings.

Concluding the adversary proceedings concerning the properties, the court voided the transfers to Wheatley. Final judgment was entered on March 18, 1987. Dwyer timely filed *pro se* his notice of appeal on March 26, 1987.

### E. The Appeal

Dwyer succeeded over Gill's objections in obtaining a vacation of an order, dismissing his appeal for lack of prosecution. He also filed three motions for extensions of time to file his brief on grounds that he was attempting to retain a lawyer. Two were granted and the third was denied as moot because Dwyer had already filed a paper denominated as his brief. No lawyer has appeared here for Dwyer.

Dwyer's "brief" is not a legal memorandum, but a litany of claims and allegations, dwelling to a considerable extent on the injustices he has suffered due to Haynes', and more particularly her bankruptcy trustee's, alleged perjury. To the extent that he defines his appeal, he questions granting preclusive effect to what occurred before the state court in December, 1982, because of alleged perjury and fraud, which tainted the state court proceedings; similarly, he charges that Haynes' trustee misrepresented to the bankruptcy court what occurred before the state court.

Appellee Gill argues the preclusive effect under California law of the settlement agreement and the duty of the bankruptcy court to apply this doctrine as a matter of full faith and credit under 28 U.S.C. § 1738. He contends that much of Dwyer's brief consists of irrelevant and immaterial factual accusations that are inflammatory and unsupported; he moves in his brief that the panel strike all of Dwyer's brief, except for five lines that

specifically concern how the court erred below, as unsupported by the record and outside the scope of the appeal. Finally, he urges that this court award him $4,050 in fees under Rule 38 of the Federal Rules of Appellate Procedure on grounds that the appeal is frivolous and Dwyer's motions for extensions of time have been filed in bad faith.

At the time set for oral argument, a person, identifying herself as Haynes' daughter, appeared to seek a continuance because of the unavailability of the appellant and his lawyer. The motion was denied as untimely and prejudicial to the appellee.

### ISSUE

The primary issue before us is whether Dwyer is bound by the stipulation entered into by him in open court and approved as evidenced by a minute order, the stipulation having been complied with by Haynes, the other party thereto.

### STANDARD OF REVIEW

■ A summary judgment, because it applies the law to undisputed facts viewed in a light most favorable to the respondent, is reviewed *de novo. Sanyo Elec., Inc. v. Taxel (In re World Financial Services Center, Inc.)*, 78 B.R. 239, 240 (9th Cir. BAP 1987), *aff'd without opinion*, 860 F.2d 1089, 1089–90 (9th Cir.1988); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

### DISCUSSION

#### A. Estoppel

■ Appellee Gill, Haynes' trustee, urged here and below that Dwyer should be collaterally estopped by his verbal settlement and the court below explicitly based its resolution upon collateral estoppel. However, collateral estoppel should not apply because the resolution in state court with which Gill seeks to bind Dwyer was not the foundation of any verdict or judgment reached by litigation. *Hirst v. California*, 770 F.2d 776, 778 (9th Cir.1985)

(applying California law); *Del Mar Avionics v. Quinton Instruments Co.*, 645 F.2d 832, 834–35 (9th Cir.1981) (quoting *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).

■ Nevertheless, other doctrines of preclusion apply. A lawyer, under California law, can bind his client by an agreement stated verbally for the record. Cal. Civ.Proc.Code § 283(1).[1] A stipulation made in open court and recorded by the reporter "constitutes 'not only an agreement between the parties, but also between them and the court, which the latter is bound to enforce, not only for the benefit of those interested, but for the protection of its own honor and dignity.' " *Webster v. Webster*, 216 Cal. 485, 489, 14 P.2d 522, 523 (1932) (quoting *Meagher v. Gagliardo*, 35 Cal. 602 (1868)). As the court stated with respect to a stipulation made during the course of a divorce suit, "[n]othing in section 283 of the Code of Civil Procedure militates against the binding effect of a stipulation entered into and executed by the parties in open court and duly reported in the proceedings of the trial." 216 Cal. at 489–90, 14 P.2d at 523 (citations omitted). The court noted further that even when terms have not been documented in the record, they are enforceable if ratified by the conduct of the parties, especially when a party has changed position in reliance upon the agreement and would be prejudiced by the other's repudiation of it as invalid. 216 Cal. at 490–91, 14 P.2d at 524.

The court in *Webster* when alluding to the enforceability of positions adopted during litigation, while not explicitly citing it, invoked the doctrine of judicial estoppel that has been employed in principle, if not in name, by many federal courts to preclude a party from asserting inconsistent positions on the same matter in the same or successive suits. *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 211–12 (1st Cir.1987); *Scarano v. Central R.R.*, 203 F.2d 510, 512–13 (3d Cir.1953). The doctrine protects the integrity and efficacy of the courts; a litigant should not be able to profit by intentionally taking contradictory positions. *Patriot Cinemas*, 834 F.2d at 212; *see also* 1B J.W. Moore, J.D. Lucas & T.S. Currier, *Moore's Federal Practice* ¶ 0.405[8] (2d ed.1988) (defining judicial estoppel and distinguishing it from other preclusion doctrines). In *Patriot Cinemas*, the court stated:

> We agree with Judge Hastie's description of the guiding principal of judicial estoppel in *Scarano v. Central R. Co.*, 203 F.2d 510 (3d Cir.1953). Judicial estoppel should be employed when a litigant is "playing fast and loose with the courts," and when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."

834 F.2d at 212 (quoting *Scarano*, 203 F.2d at 513).

Application of the doctrine in jurisdictions where it has been accepted depends upon the particular facts and circumstances of each case. *Scarano*, 203 F.2d at 513. Although the Ninth Circuit has not had occasion to specify its scope, it has favorably considered its application when invoked to preclude a party's assertion of allegedly inconsistent positions. *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210–11 & n. 4 (9th Cir.1988) (citing *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985); *Garcia v. Andrus*, 692 F.2d 89, 94 (9th Cir.1982)). Its application *sua sponte* has also been advocated when a party has presented repetitive requests for identical relief. *Religious Technology Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir.1989) (Hall, C.J., dissenting).

We find that the circumstances of this case are particularly appropriate for the application of judicial estoppel. Dwyer's and Haynes' agreement was stated by counsel on the record. Its terms were documented in the transcript of the hearing

---

**1.** An attorney has the authority:

> [t]o bind his client in any of the steps of an action or proceeding by his agreement filed with the Clerk, or entered upon the minutes of the Court, and not otherwise. . . .

Cal.Civ.Proc.Code § 283(1).

and affirmed by Dwyer and Haynes individually, not only verbally on the same record, but also by their subsequent conduct. Haynes retained possession and control of the realty, and shortly after the hearing transferred the stock to Dwyer in December, 1982. Finally, the court approved the agreement by its subsequent minute order. After the passage of several years during which the bankruptcies of Dwyer and Haynes intervened, Dwyer now seeks to repudiate the stipulated and effected property transfer to Haynes as invalid. Haynes after having performed the stipulation, and after having transferred property acquired thereunder to her brother, joins Dwyer. After expressing acceptance of the finality of their transfers and obtaining the benefit of their reciprocal obligations, Dwyer and Haynes should not be heard to challenge the real estate conveyances as defective.

### B. Full Faith and Credit

■ Bankruptcy courts are compelled by law to give the same effect to state court proceedings as they would be given in the state courts. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262, *reh'g denied*, 458 U.S. 1133 (1982) (under 28 U.S.C. § 1738,[2] federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the state where entered); *In re Farrell*, 27 B.R. 241, 243 (Bankr.E.D.N.Y.1982) (bankruptcy court must give full faith and credit to a prior final state court judgment in the same manner as would the court in that state). As already discussed, Dwyer would be bound under state law.

Moreover, under section 1738, it is well established that this court can consider the state court record of the statements and settlements that are relevant to proceedings before us. *See Agnew v. City Nat'l Bank & Trust Co.*, 502 F.Supp. 760, 766–67 (S.D.Ohio 1979), *aff'd sub nom. Bilderback v. City Nat'l Bank & Trust Co.*, 639 F.2d

331, 332 (6th Cir.1981); *McCullough v. Walker Livestock, Inc.*, 220 F.Supp. 790, 792, 800 (W.D.Ark.1963); *In re Rooney*, 20 F. Cas. 1153 (D.N.J.1871). The court held in *Rooney* under the predecessor to section 1738 that the authenticated record of admissions in state court proceedings concerning property transfers were admissible in a later bankruptcy case on the question of fraudulent transfers. In *Agnew* and *McCullough*, federal courts reviewed state court records and bound parties to stipulations for settlement considered and approved by the state court. Even though Dwyer objected to the manner in which the state court proceedings were characterized to the bankruptcy court, he did not question the accuracy or other aspects of authenticity of the state court record upon which the court below relied.

Even though we question the applicability of the doctrine (collateral estoppel) upon which the court below explicitly bound Dwyer, we can affirm on any ground fairly presented in the record. *Hansen v. Finn (In re Curry & Sorensen, Inc.)*, 57 B.R. 824, 829 n. 5 (9th Cir. BAP 1986); *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1177 (9th Cir. 1984).

### C. Sanctions

■ Appellee Gill contends that Dwyer's appeal is frivolous and seeks sanctions under Rule 38 of the Federal Rules of Appellate Procedure in the amount of the attorneys' fees he incurred for responding. The panel may award damages under the rule when an appeal is frivolous, i.e. when the result is obvious or the arguments are wholly without merit. *Omoto v. Ruggera (In re Omoto)*, 85 B.R. 98, 101 (9th Cir. BAP 1988); *Burkhart v. Federal Deposit Insurance Corp. (In re Burkhart)*, 84 B.R. 658, 661 (9th Cir. BAP 1988). Damages awardable include attorneys' fees and single or double costs incurred by the opponent. *Burkhart*, 84 B.R. at 661–62; *Scott*

---

**2.** Section 1738 provides to the extent relevant here as follows:

Such ... records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court

within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

*v. Younger*, 739 F.2d 1464, 1467 (9th Cir. 1984).

Dwyer did not provide a legal memorandum for purposes of his appeal, but filed instead a recitation of charges that were partially a rehash of issues raised below and otherwise constituted unsupported allegations of wrongdoing by other parties and counsel. Instead of explaining how the lower courts erred, he essentially sought a rehearing here of issues considered and rejected by both the state and bankruptcy courts. This conduct cannot be condoned. Bankruptcy Rule 8010(a)(1)(E) requires the appellant to state his contentions "with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." When a party failed to explain the applicability of cited cases that were noncontrolling decisions from another circuit, the court found the appeal to be frivolous and awarded fees and costs. *Greco v. Stubenberg*, 859 F.2d 1401, 1404 (9th Cir.1988). The circumstances here are similar because the panel was not provided with a legal basis for appellant's position. It appears, therefore, that appellee Gill is correct that an attorneys' fee award is appropriate.

Additionally, Gill contends that Dwyer's actions here are a continuation of an abusive pattern of litigation designed to keep the property from the reach of creditors. In this regard, we are of the view that the matter of sanctions should be further considered and assessed by the trial court.

## CONCLUSION

It was proper for court below to refuse to (i) take cognizance of what amounts essentially to a collateral attack on earlier state court proceedings and (ii) adjudicate anew the validity and scope of Dwyer's 1974 conveyance to Haynes. The decision below is correct as a matter of application of the judicial estoppel doctrine and full faith and credit under 28 U.S.C. § 1738.

Accordingly, the judgment is AFFIRMED. The case is REMANDED for a determination as to the appropriate amount to be assessed as sanctions.