**MILLER TABAK HIRSCH & CO. and Cede & Co., Plaintiffs,**

v.

**The PENN TRAFFIC COMPANY, Defendant.**

Civ. A. No. 86–1369.

United States District Court, W.D. Pennsylvania.

Aug. 22, 1986.

David Borkovic, Kirkpatrick & Lockhart, Pittsburgh, Pa., Sanford M. Litvak, Donovan, Leisure, Newton & Irvine, New York City, for plaintiffs.

Edward G. O'Connor, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant.

## OPINION

DIAMOND, District Judge.

The plaintiffs in this action, Miller Tabak Hirsch & Co. ("MTH") and Cede & Co. ("Cede"), are New York partnerships. MTH is an investment banking firm, a registered broker-dealer and a member of the New York and American Stock Exchanges. Cede holds for MTH a number of shares of the defendant, The Penn Traffic Company, ("PTC" or "Company").

PTC is a Pennsylvania corporation engaged primarily in the operation of supermarkets and a dairy business in Pennsylvania and elsewhere. PTC common stock is traded on the American Stock Exchange.

This suit arises out of a proxy contest between MTH, an approximate 7% shareholder of PTC, and the Company itself. In this action the plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201: (1) that the June 27, 1986, shareholders' meeting of PTC was invalidly and illegally called and held; (2) that the PTC by-law authorizing the Board to fix the record date for the annual shareholders' meeting, both before and after the purported amendment of that by-law on June 12, 1986, is defective under the Pennsylvania Business Corporation Law ("BCL"); and, (3) that the aforesaid purported amendment of PTC's by-law by the Executive Committee of PTC's Board of Directors ("Board") was invalid and that it and all actions and votes taken at the June 27 shareholders' meeting are null and void. Based on the foregoing, plaintiffs also seek to enjoin PTC from implementing or taking any action based upon the June 27 meeting.

At the hearing and oral argument on plaintiffs' motion for a preliminary injunction, the parties stipulated that the court may make findings of fact from affidavits, exhibits and a statement of undisputed facts, all of which previously were submitted by the parties. In addition, they agreed that the trial on the merits be advanced and consolidated with the hearing on plaintiffs' application for preliminary in-

junction. Accordingly, the following will constitute the court's final findings and rulings on the merits. Rule 65(a)(2) and 52(a), Fed.R.Civ.P., 28 U.S.C.

## I.

### Background Facts

The facts underlying this case are essentially undisputed.

At a meeting of the Board on January 28, 1986, it scheduled the 1986 annual meeting of the shareholders of PTC for June 17, 1986, and fixed April 21, 1986, as the record date for the determination of those shareholders entitled to notice of, and to vote at, that meeting. The April 21 record date was established in accordance with Article II, Section 13 of the Company's by-laws, which provided in part that the Board "may fix a time, not more than 60 days, prior to the date of any meeting of shareholders ... as a record date for the determination of the shareholders entitled to notice of, and to vote at, any such meeting...."

At a subsequent meeting of the Board, it decided to submit several proposals for shareholders' approval at the annual meeting. These included two amendments to the Company's Articles of Incorporation. One of these was to increase the number of authorized shares of its common stock from 4,000,000 to 12,000,000 shares and to authorize 2,000,000 shares of preferred stock upon such terms and conditions as the Board may determine. The other was a so-called "business combination" amendment. It is not necessary to set forth the text of those amendments, suffice to state that plaintiffs viewed them as anti-takeover amendments, and at times herein they will be referred to as such.

On May 1, 1986, PTC disseminated to shareholders of record as of April 21, 1986, proxy materials ("Proxy Statement") and a notice of the annual meeting of shareholders. The proxy statement contained information concerning the several proposals which would be submitted for approval to the shareholders and solicited proxies in favor of those proposals.

MTH initially purchased PTC stock in March, 1986, and has been a beneficial shareholder of PTC stock continuously since then. As of April 21, 1986, MTH beneficially owned and had the right to vote an aggregate of 11,500 shares of PTC common stock, and as of June 16, 1986, that total was 150,000 shares.

By a letter dated May 23, 1986, MTH advised PTC that MTH had acquired 100,000 shares of PTC stock in open market purchases and desired to acquire the entire equity of the company. In addition, in view of the upcoming annual meeting at which the anti-takeover proposals were to be considered, MTH offered to meet with the president of PTC to discuss a business combination pursuant to which MTH would purchase for cash all of the Company's outstanding shares.

On May 29, MTH further advised PTC by letter that MTH would solicit proxies for the June 17 meeting in opposition to the proposals of management.

The Board declared a two-for-one stock split on June 4, 1986. This was in the form of a 100% stock dividend and was subject to shareholder approval of the proposal to amend the Articles of Incorporation to increase the authorized common stock. About the same time, the Board sent a letter to PTC shareholders of record as of April 21, 1986, announcing the proposed stock split, advising of the activities of MTH, and again soliciting proxies for management's proposals. Thereafter, by a letter to MTH dated June 5, PTC rejected MTH's overtures.

MTH then commenced an action in the United States District Court for the Southern District of New York against PTC and the members of its Board ("New York Action"). In this suit which was filed on June 6, 1986, MTH sought preliminarily to enjoin the voting of the original proxies obtained by the Board, which MTH contended had been solicited upon false and misleading proxy materials. MTH also demanded that PTC issue corrected proxy materials and

postpone the annual meeting ten days in order to give PTC shareholders adequate time to review and consider the corrected proxy materials. A hearing on the preliminary injunction was set for June 13.

Meanwhile, the Executive Committee of the PTC Board met on June 12. At that meeting, the Committee, consisting of three of the eleven-member Board, rescheduled the annual meeting of the shareholders from June 17 to June 27, 1986. Because the Committee chose to retain the April 21 record date which was sixty-seven days prior to the rescheduled meeting date, it voted to amend Article II, Section 13 of the Company's by-laws to permit the Board to fix a record date of up to seventy-five days (instead of sixty) prior to the date of any meeting of shareholders.

After the Executive Committee meeting, during the course of the day on June 12, all of the other PTC directors were advised by separate telephone calls from John M. Kriak ("Kriak"), Secretary of PTC, of the action taken that day by the Executive Committee, and all of those board members indicated assent to that action.

Also on June 12, supplemental proxy materials were disseminated by the Board to shareholders of record as of April 21, 1986. The supplemental materials gave notice of the postponement of the annual meeting and advised the shareholders in all particulars regarding the MTH overtures and the pending litigation in New York.

Because PTC had complied with MTH's demands to disseminate corrected proxy materials and to reschedule the annual meeting date, MTH withdrew its motion for a preliminary injunction in the New York Action.

Subsequently, at a regular meeting of the Board on June 17, 1986, all eleven members of the Board unanimously ratified the Executive Committee action of June 12.[1]

At the rescheduled annual meeting of PTC shareholders on June 27, 1986, the shareholders elected management candidates to the Board and approved both of the anti-takeover amendments to the Company's Articles.[2]

Plaintiffs seek to invalidate that meeting and the action therein taken.

## II.

### Discussion

#### A.

#### Judicial Estoppel

A threshold issue which we must dispose of is the defendant's contention that plaintiffs should be judicially estopped in the instant action because the relief which they seek here is inconsistent with that which they sought and received, by defendant's concession, in the New York Action.

In the New York Action, the plaintiffs demanded that the defendant send corrected proxy materials to its shareholders and postpone the annual shareholders' meeting for ten days. As stated, *supra*, the defendant conceded this, and plaintiffs then withdrew a pending motion for such preliminary injunction relief.

---

1. This is not among the undisputed facts submitted by the parties. However, it is set forth specifically in paragraph 40 of Kriak's affidavit ("Kriak Aff.") and in the third and fifth paragraphs of the ratification resolution of the Board on July 15, 1986, Exhibit 27 to the Kriak Aff., and plaintiffs have offered no evidence to the contrary. *See* Discussion, *infra*.

2. There were 1,856,232 shares of common stock represented in person or by proxy at the meeting. Three members of the Board were elected. Each was a sitting Board member whose term was expiring, and each received approximately 1,500,000 votes. Although MTH participated in the meeting, it did not present any candidates

for election to the Board. The amendment to the Articles of Incorporation increasing the authorized shares of common stock from 4,000,-000 to 12,000,000 and authorizing 2,000,000 shares of preferred stock, was approved 1,216,-768 votes for (.655 of all shares represented in person or by proxy ("the shares")) to 571,925 votes against (.308 of the shares), with 62,618 shares (.034 of the shares) abstaining. The so-called "business combination" amendment was approved with 1,209,943 votes in favor (.652 of the shares) and 575,916 votes opposed (.310 of the shares), with 65,452 shares (.035 of the shares) abstaining.

We do not agree with the defendant, however, that the relief which plaintiffs' seek here is so inconsistent with that which they demanded and received in the New York Action that plaintiffs should be judicially estopped in the instant suit under the principles set forth in *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953), and the other authorities cited by the defendant in its main brief.

In this suit, plaintiffs challenge the validity of the Company's record date by-law. Plaintiffs did not expressly or impliedly concede the validity of that by-law in the New York Action—that simply was not an issue.

Plaintiffs sought and received a postponement of the PTC annual shareholders' meeting in the New York Action. But they certainly did not seek the retention of the April 21 record date, which is at the heart of the controversy in the instant suit.

The validity of the purported amendment on June 12 of the record date by-law is one of the principal issues in the case *sub judice*, yet it had not even occurred when the New York action was filed, and, of course, was not an issue there.

The ratification of the purported amendment of the record date by-law, which plaintiffs so hotly contest here, was not an issue in the New York Action. Indeed, plaintiffs were not even aware of the *first* of the defendant's three attempts at ratification until after plaintiffs withdrew their application for a preliminary injunction in the New York suit. And, of course, the proxy materials at issue in New York were never an issue in this suit.

Accordingly, we hold that the defense of judicial estoppel has not been established.

### B.

#### *Validity of Article II, Section 13 of PTC By-Laws*

Plaintiffs challenge the *legality* of the PTC by-law and the purported amendment thereof, which authorizes the Board to fix a record date for the determination of those shareholders who are entitled to notice of, and to vote at, the annual shareholders' meeting.

The existing by-law, found in Article II, Section 13 of the Company's by-laws, provides in its pertinent part as follows:

> *Section 13. Determination of Shareholders of Record.*
>
> The Board of Directors may fix a time, not more than sixty days, prior to the date of any meeting of shareholders ... as a record date for the determination of the shareholders entitled to notice of, and to vote at, any such meeting.... In such case, only such shareholders as shall be shareholders of record on the date so fixed shall be entitled to notice of, and to vote at, such meeting ... notwithstanding any transfer of any shares on the books of the Company after any record date fixed as aforesaid.

Plaintiffs contend that this by-law, and, *a fortiori*, the challenged amendment thereof extending the record date to seventy-five days, are invalid because they violate § 509 of the BCL, which plaintiffs contend limits a corporation absolutely to a maximum of fifty days between the record date and the annual meeting date.

Section 509 of the BCL, 15 P.S. § 1509, provides in its pertinent part as follows:

> § 1509. Determination of shareholders of record
>
> Unless the by-laws otherwise provide, the board of directors may fix a time, not more than fifty days prior to the date of any meeting of shareholders ... as a record date for the determination of the shareholders entitled to notice of, or to vote at, any such meeting.... In such case, only such shareholders of record on the date so fixed shall be entitled to notice of, or to vote at, such meeting ... notwithstanding any transfer of any shares on the books of the corporation after any record date fixed, as aforesaid.... Unless a record date is fixed by the by-laws or the board of directors for the determination of shareholders entitled to receive notice of, or to vote at, a shareholders' meeting, transferees of

shares which are transferred on the books of the corporation within ten days next preceding the date of such meeting shall not be entitled to notice of or to vote at such meeting.

As previously noted, on January 28, 1986, the Board set June 17, 1986, as the date for the annual shareholders' meeting and April 21, 1986, as the record date for that meeting, and while the meeting date was rescheduled to June 27, the record date was left unchanged at April 21. Thus, the record date was fifty-seven days prior to the originally scheduled annual meeting and sixty-seven days prior to the rescheduled meeting, so that if plaintiffs' contention is correct and the PTC record-date by-law is invalid, the June 27 meeting and all action taken therein also are invalid.

### Section 509 of the BCL

This diversity action brought pursuant to 28 U.S.C. § 1332(a) is governed by the law of Pennsylvania, since the defendant is a Pennsylvania corporation and virtually all the relevant matters in this litigation occurred in Pennsylvania. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 659 n. 3 (3d Cir.1980). Unfortunately neither party has cited to any judicial authority in Pennsylvania, or, indeed, elsewhere, construing § 509 of the BCL, and our research has disclosed none. We must, therefore, predict how the Supreme Court of Pennsylvania would construe the statute. *McKenna v. Ortho Pharmaceutical Corp., supra.*

In arriving at our prediction, we must examine "all relevant sources of that state's law in order to isolate those factors that would inform [our] decision." These may include where there is an absence of more pertinent sources indicative of what the highest state court would rule, "schol-

arly treatises, the Restatement of Law, and germane law review articles—particularly, it seems, of schools within the state whose law is to be predicted." *Ortho, supra*, at 662–663. (citations omitted).

We note first that respected commentators are of the opinion that § 509 was not intended to limit, and does not have the effect of limiting, the power of corporations to set a record date in excess of fifty days. Dean Sell in his work *Pennsylvania Business Corporations* at § 509.3 (1984) states, "By the prefatory phrase, 'unless the by-laws otherwise provide,' it would appear that a record date specified in the by-laws may exceed the fifty day limitation imposed upon the directors."

William E. Zeiter, in an article appearing in 74 Dickinson Law Review, Fall, 1969 Number 1, page 1 entitled *A Comparison of the Pennsylvania Business Corporation Law and the New Delaware Corporation Law in Light of the 1968 Revision of the Pennsylvania Law*, states at page 75:

The BCL provides that in general the board may not fix a record date more than 50 days in advance of a meeting of (sic) other corporate action; but permits the corporation to modify the 50–day limit in a by-law adopted by either the board or the shareholders; the GCL [Delaware General Corporation Law] limits the record date period to 60 days in all cases.[3] (footnotes omitted).

In addition, the defendants submitted an affidavit which lists eleven major corporations incorporated under the laws of the Commonwealth of Pennsylvania and sets forth the number of days permitted by the by-laws of each of those corporations between the record date and the annual meeting date. These are set forth fully in the footnote below[4] and range from 100 days,

---

**3.** As indicated in a footnote on page 1 of the above Law Review Article:

Mr. Zeiter is a member of the Pennsylvania Bar Association Corporation Law Committee and acted as draftsman of the amendments to the Pennsylvania corporation laws embodied in Act of Jan. 18, 1966, No. 519, [1965].... With ..., Mr. Zeiter also drafted the amendments to the Pennsylvania business corpora-

tion law embodied in Act of July 20, 1968, No. 216, [1968] ... Mr. Zeiter is the author of the Foreward to Purdon's Pennsylvania Statutes Annotated, Title 15, Corporations and Unincorporated Associations (1967).

**4.** Exhibit "A", Affidavit of Stuart Kaplan:
Aluminum Company of America—100 days
Allegheny International, Inc.—70 days

in the case of Aluminum Company of America, to 60 days in the case of PPG Industries, Inc. and Salem Corporation, with such corporations as Westinghouse Electric having a record date of 80 days, and PNC Financial Corporation, 90 days, and six others having 70–day limits.

While the plaintiffs submitted an affidavit listing a number of Pennsylvania corporations having a record date of fifty days, we agree with the defendant that this is ambiguous; i.e., counsel to these corporations could believe that § 509 limits the record date to fifty days, or they could have doubt as to the meaning of § 509, or they could be satisfied with a fifty-day record date; whereas, counsel for those corporations which have established a record date in excess of fifty days fairly can be said to have concluded that § 509 properly construed permits a date to be fixed by by-laws which exceeds fifty days.

In addition to the significance of the foregoing as an indication of how § 509 has been construed and applied by the legal profession in Pennsylvania, we believe that the Pennsylvania Supreme Court in construing § 509 would consider the impact on those corporations and their shareholders that a ruling limiting a record date to fifty days would have. 1 Pa.C.S.A. § 1921(c)(6) and *see Janney v. Philadelphia Transportation Company*, 387 Pa. 282, 128 A.2d 76, 79 (1957).

■ We are further led to the conclusion that § 509 of the BCL permits Pennsylvania corporations through their by-laws to provide for record dates in excess of fifty days by the rule of statutory construction that words must be given their plain meaning. 1 Pa.C.S.A. § 1903(a); *Crusco v. Ins. Co. of North America*, 292 Pa.Super. 293, 437 A.2d 52 (1981); *Southwest Delaware County Mun. Auth. v. Township of Aston*, 413 Pa. 526, 198 A.2d 867, 873 (1964);

*Commonwealth v. Cartwright*, 350 Pa. 638, 40 A.2d 30, 33 (1944).

By stating in § 509 that "unless the by-laws otherwise provide, the board of directors may fix a time, not more than 50 days ...", the drafters appear plainly to be saying: "If the by-laws of a corporation are silent on the subject, its board of directors may fix the record date, in which case, however, the record-date-spread may not be more than fifty days. If a corporation wants to confer authority on its board of directors to fix a record date in excess of fifty days, it may, but this must be done specifically through its by-laws." This, of course, is the construction put on § 509 by commentators Sell and Zeiter, *supra.*

There is additional reason to hold as we do. The present language was first incorporated into § 509 by the Act of 1933. The previous Act, the Act of 1929, which was widely construed as limiting the time-spread of record dates stated it differently. It provided that a "board of directors ... may, if the by-laws of such corporation so provide, fix in advance a date, not exceeding 40 days preceding the date of any meeting of the stockholders...." Act April 30, 1929, No. 401, P.L. 903. That language clearly limited to forty days the authority which a corporation by its by-laws could give to a board of directors to fix a record date. The language in the present statute represents a substantial change from that of the 1929 Act and as such invokes the rule of statutory construction that a change in the language of a statute ordinarily indicates a change in the legislative intent. *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977); *Sekel v. Iagenemma*, 170 Pa.Super. 621, 90 A.2d 587 (1952).

■ For the foregoing reasons, we hold that the Pennsylvania Supreme Court would construe § 509 as permitting a Pennsylvania corporation to fix a record date in excess of fifty days from the shareholders'

Copperweld Corporation—70 days
Duquesne Light Company—70 days
Equimark Corporation—70 days
Pittsburgh Brewing Company—70 days
PNC Financial Corporation—90 days

PPG Industries, Inc.—60 days
Ryan Homes, Inc.—70 days
Salem Corporation—60 days
Westinghouse Electric Corporation—80 days.

meeting date where this is provided for in the by-laws of the corporation.

## C.

*Amendment of Article II, Section 13 of PTC By-Laws By the Executive Committee and Ratification of this Action*

Plaintiffs argue, however, that even if § 509 of the BCL be construed to permit a corporation through its by-laws to provide for a record date in excess of fifty days, the attempt by the PTC Executive Committee to amend the by-laws on June 12 to provide for a seventy-five day record date so as to authorize the April 21–June 27 spread of sixty-seven days was ineffective for that purpose because the Executive Committee did not have authority to amend PTC's by-laws. In addition, plaintiffs contend that the attempt at ratification on June 12 failed because ratification may only come at a board meeting after notice and the individual telephone calls by which Kriak attempted to obtain ratification on June 12 did not constitute a lawful substitute for such a meeting.

■ We need not decide these issues, because we believe that the evidence firmly establishes that the entire Board of PTC at its regularly scheduled meeting on June 17, unanimously ratified the action taken by the Executive Committee on June 12 and that this ratification, whether or not it be given effect retroactive to June 12, legally authorized the April 21 record date for the June 27 meeting.

Plaintiffs challenge the attempt at ratification of June 17. Plaintiffs argue first that the minutes of the Board meeting on June 17 simply are inadequate evidence that any ratification took place at that meeting. We agree that the minutes of the June 17 meeting, which state only that "The minutes of the March 25, 1986 and June 3, 1986 meeting were approved. Mr. Malacarne [PTC President] reviewed the Executive Committee meetings minutes since the last Board Meeting" are insufficient evidence from which one properly can

conclude that the Board ratified anything at that session. However, Kriak's affidavit clearly establishes that there was ratification at this meeting. At paragraph 40 of his affidavit, Kriak states:

At a regularly scheduled meeting of the Board of PTC on June 17, 1986, the Executive Committee action in amending the By-Laws taken on June 12, 1986, was again reviewed with the entire Board and the Board again unanimously concurred with and approved that amendment and the action taken by the Executive Committee. Attached hereto as Exhibit 26 is a copy of the relevant portion of the minutes of the Board meeting of June 17, 1986.

In addition, the Board met on July 15, 1986, at a special meeting convened for the express purpose of adopting a formal resolution ratifying the actions taken by the Executive Committee on June 12, 1986, amending Article II, § 13 of the by-laws. The resolution, as formally adopted, is included as Exhibit 27 to the Kriak affidavit and states in part as follows:

WHEREAS, on June 12, 1986, the Executive Committee adopted a resolution amending and restating Article II, Section 13 of the By-laws as set forth in the minutes of that meeting; and

.     .     .     .     .

WHEREAS, the action taken by the Executive Committee was reviewed by this Board of Directors at its regular meeting held on June 17, 1986, at which all Directors were present, and the Directors unanimously concurred with such action; and

WHEREAS, the Board desires to unequivocally reaffirm the action taken by the Executive Committee.

NOW, THEREFORE, BE IT RESOLVED, that all of the actions taken by the Executive Committee on June 12, 1986, as set forth in the minutes of that meeting and as reviewed with and unanimously concurred with by this Board on June 17, 1986, hereby are formally ratified, confirmed and approved in all respects.

The resolution thus confirms that the Board met on June 17 and unanimously ratified the June 12 action of the Executive Committee.

Plaintiffs have offered no evidence to controvert any of the foregoing.

Article VIII of the Company's by-laws provides in part that "these By-laws may be altered or amended by a vote of a majority of the members of the Board of Directors at any regular or special meeting duly commenced *after notice of that purpose....*" (emphasis supplied).

Defendant has offered no evidence as to the content or fact of any notice of the regular June 17 meeting, and plaintiffs argue that this defect invalidates any purported ratification action which might have been taken at that meeting. However, the meeting was attended by every member of the Board, and ratification was unanimous. Kriak Aff., *supra.* Section 8(c) of the BCL, 15 P.S. § 1008(C) provides:

> Attendance of a person, in person or by proxy, at any meeting shall constitute a waiver of notice of such meeting, except where a person attends a meeting for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened.

From the foregoing we conclude that there was ratification on June 17 of the Executive Committee action on June 12.

### D.

*Retroactive Effect of By-Law Amendment*

Plaintiffs argue, nevertheless, that even if there was ratification on June 17 this ratification cannot be given effect retroactive to June 12, because by June 16 when there was no valid record date set for the June 27 meeting, § 509 of the BCL established a record date of ten days next preceding the June 27 meeting. This, according to plaintiffs, is June 16. *But see* 15

P.S. § 1908. Plaintiffs point out that between April 21 and June 16 MTH had acquired substantial additional shares and that these became vested voting rights on June 16 for the shareholders' meeting of June 27. The intervention of these voting rights, plaintiffs argue, precludes the retroactive application to June 12 of any ratification which may have occurred on June 17.

■ Again we must disagree. There is nothing in the wording of § 509 which suggests that a record date *must be set* no later than ten days prior to a meeting date. Or, to put it another way, that if a record date has not been set on or before the tenth day next preceding a meeting § 509 will be triggered to establish the tenth day next preceding the meeting as a date to determine those shareholders entitled to notice of, and to vote at, the meeting. Section 509 simply states that "Unless a record date is fixed by the by-laws or the board of directors ... transferees of shares which are transferred on the books of the corporation within ten days next preceding the date of such meeting shall not be entitled to notice of or to vote at such meeting." 15 P.S. § 1509. It does not state when the record date must be fixed. Obviously, if the BCL required that *notice* of a shareholders' meeting be no later than ten days prior to the meeting, this would require us to construe § 509 as also requiring that the record date be *fixed* at least ten days prior to the meeting, otherwise the minimum statutory notice could not be given and the two provisions would not be in harmony. However, the BCL provides only for *five days* notice of shareholders' meetings. Section 502, 15 P.S. § 1502, provides in its pertinent part as follows: "Written notice of every meeting of the shareholders shall be given ... to each shareholder of record entitled to vote at the meeting, at least five days prior to the day named for the meeting, unless a greater period of notice is required elsewhere in this Act in a particular case...."

Therefore, giving effect, as we must under rules of statutory construction to both § 502 and § 509, *see* 1 Pa.C.S.A. § 1922(1) and (2), and harmonizing those two sections of the BCL, we conclude that a corporation has up to five days preceding a shareholders' meeting to establish a record date and notify those shareholders entitled to notice of, and to vote at, the meeting. There was no *lapse* of a record date here, because it was established at the latest on June 17, which was ten days prior to the shareholders' meeting, *see* 1 Pa.C. S.A. § 1908, and even under plaintiffs' theory, its rights to additional share votes did not vest.

It is true that Article II, Section 4 of the PTC's by-laws provides that "written notice of every meeting of the shareholders shall be given ... at least *ten days* prior to the day named for the meeting." (emphasis supplied). But June 17 was ten days prior to the June 27 meeting, and since notice by mail or telegraph is deemed to be given when deposited in United States mail or with a telegraph office for transmission to the person, *see* BCL § 8 A, 15 P.S. § 1008 A, a record date fixed on June 17 for a June 27 meeting would be legally possible under §§ 502 and 509 of the BCL and Article II, Section 4 of the by-laws.

In any event, Article II, Section 4 of the Company's by-laws was complied with, since, as we indicated at p. 6, *supra, notice* was sent to the proper shareholders on June 12, fifteen days prior to the June 27 meeting.